## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.G.I.A., INC., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Civil Action No. 07-CV-105-RCL |
| ) | |
| MEDEX ASSISTANCE CORPORATION, ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

Defendant, Medex Assistance Corporation, hereby opposes Plaintiff's Application for Temporary Restraining Order and Preliminary Injunctive Relief and respectfully requests that the Court deny Plaintiff's Application. Defendant directs the Court's attention to the attached Defendant's Memorandum of Points and Authorities in Opposition to the Plaintiff's Application for Temporary Restraining Order and Preliminary Injunctive Relief.

Respectfully submitted,

Dated: January 30, 2007

/S/ CREIGHTON R. MAGID      _____
Creighton R. Magid (D.C. Bar#476961)
Dorsey & Whitney LLP
Washington Square
1050 Connecticut Avenue NW, Suite 1250
Washington, D.C. 20036
(202) 442-3000 (telephone)
(202) 442-3199 (facsimile)

Counsel For Defendant
**MEDEX ASSISTANCE CORPORATION**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 30th day of January, 2007, copies of the foregoing

Opposition, Memorandum of Points and Authorities in Support, Declaration and Proposed Order

were sent by electronic means and mailed by first-class mail, postage prepaid to:

Stephen M. Pavsner, Esquire (spavsner@jgllaw.com)
Lawrence R. Holzman, Esquire (lholzman@jgllaw.com)
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland  20770

/S/ CREIGHTON R. MAGID
_____
Creighton R. Magid

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| A.G.I.A., INC., | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    Civil Action No. 07-CV-105-RCL |
| | ) |
| MEDEX ASSISTANCE CORPORATION, | ) |
| | ) |
| **Defendant.** | ) |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiff A.G.I.A., Inc. ("AGIA") has brought this action seeking to have the Court impose obligations on defendant MEDEX Assistance Corporation ("MEDEX") that are not a part of – and directly contradict – the contract between AGIA and MEDEX.  Further, AGIA seeks this relief in the form of a temporary restraining order and preliminary injunction, despite the fact that the issues raised in the motion have been in dispute since September, 2006, and despite the fact that MEDEX has not used any of the alleged "trade secrets" and has pledged not to make any use of the alleged "trade secrets" without first providing AGIA with at least 14 days' advance notice – if it decides to use the "trade secrets" at all.  Because AGIA's application for a temporary restraining order and a preliminary injunction has no basis in the law, or in the facts, it should be denied.

## FACTS

AGIA, which markets insurance products to affinity groups, and MEDEX, which provides worldwide travel insurance and travel assistance, entered into a Service Agreement in January, 2002, under which MEDEX agreed to provide defined indemnity and assistance benefits to individual members (termed "Eligible Members" in the Service Agreement) of various affinity groups with which AGIA had contractual relationship (termed "Participating

Groups" in the Service Agreement).  (The Service Agreement is attached as Exhibit A to the Complaint.)[1]

Under the Service Agreement, MEDEX provided Eligible Members with both a toll-free telephone number and a collect call telephone number for access to MEDEX's Assistance Center and its trained Assistance Coordinators.  These telephone numbers, owned by MEDEX, served not only Eligible Members of AGIA's Participating Groups, but also members of other MEDEX clients.  (MEDEX's Assistance Center telephone numbers serve over 800 clients and approximately 1 million members of those clients.)

In November, 2006, AGIA delivered notice that it was terminating the Service Agreement effective December 31, 2006, and that it had entered into a new contract with On Call International, LLC, to provide travel assistance services.  AGIA also demanded that MEDEX transfer to AGIA all telephone numbers used by MEDEX to serve Eligible Members of AGIA's Participating Groups – including the collect call number used by MEDEX to handle calls from outside North America for members of *all* of its more than 800 clients – notwithstanding the fact that *MEDEX owned those lines*.  (Acceding to AGIA's demand would have required the acquisition of new lines and the reissue of membership cards with new telephone numbers to the 1 million members of MEDEX's other clients within a month.)

MEDEX did agree to inform Eligible Members of AGIA's Participating Groups who called MEDEX's telephone numbers after December 31, 2006, that On Call International, LLC was their new service provider and to inform the Eligible Members of On Call International, LLC's telephone numbers.  MEDEX has complied in all respects with those obligations.

---

[1]  The parties amended the Service Agreement in March, 2005, and again in June, 2005, to identify additional Participating Groups and a new category of "Prospective Groups" (affinity groups with whom AGIA sought to negotiate a contractual arrangement).

AGIA also demanded that MEDEX not offer MEDEX travel assistance to Eligible Members, even though nothing in the Service Agreement precluded MEDEX from making solicitations to Eligible Members. Because it has not decided whether it will ever seek to use the names and addresses of Eligible Members to solicit sales, and to avoid the need for judicial intervention, MEDEX agreed in writing to provide at least 14 days' notice to AGIA before engaging in any such solicitations. *See, e.g.*, Exhibit 17 to Plaintiffs' Memorandum at Law. (For a brief period after January 1, 2007, Eligible Members who called a MEDEX toll-free number were provided, in addition to On Call International's telephone numbers, a toll telephone number to call if they wished to retain MEDEX travel assistance. *See* Mair Decl. at ¶ 10 and Ex. A. MEDEX has since removed any reference to ongoing MEDEX travel assistance. *See* Mair Decl. at ¶ 10 and Ex. B.

AGIA has now filed suit, asserting that MEDEX somehow misappropriated AGIA "trade secrets" and has moved for issuance of a temporary restraining order and preliminary injunction that would, among other things, (a) require a judicial declaration that "AGIA Eligible Member Data consisting of the names, addresses and certain other basic information of AGIA's Eligible Members is being misappropriated by Medex;" (b) to transfer all telephone numbers used prior to January 1, 2007, to serve AGIA's Eligible Members – all of which are used to serve non-AGIA members and one of which serves members of all of MEDEX's 800+ other clients – to AGIA; and (c) using any information (including names) provided by AGIA during the term of the contract for any purpose, even though such use is not prohibited by the Service Agreement. *See* Proposed Order.

## **ARGUMENT**

As AGIA acknowledges, the burden is on the party seeking a temporary restraining order or a preliminary injunction to establish (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable injury if the injunction is not granted; (3) that an injunction will not substantially injure the other party; and (4) that the injunction will further the public interest. AGIA can establish none of these elements. Its purported "trade secret" and contract claims (as well as its excursion into the Gramm-Leach-Bliley Act) are based on several fundamental misnomers: that there is any urgent situation that requires issuance of a temporary restraining order or preliminary injunction, particularly when MEDEX has agreed to provide at least 14 days' advance notice before using any of the so-called "trade secrets;" that MEDEX is in any respect using AGIA's "customer list" or any other "member data" to solicit members of AGIA's Participating Groups; that any future use of AGIA's "customer list" or any other "member data" to solicit members of AGIA's Participating Groups would violate the Service Agreement; and that any of the data furnished by AGIA is any sort of "trade secret." In fact, AGIA provided the customer data to MEDEX with only two restrictions: MEDEX could not *disclose* the member data to a third party, and could not communicate directly with *representatives of* (not "members of") AGIA's Participating Groups. The Service Agreement does not preclude MEDEX's use of the member data, nor does it preclude MEDEX from contacting "Eligible Members" of AGIA's Participating Groups. More fundamentally, MEDEX has not used the member data or contacted any "Eligible Members" and has agreed in writing not to do so without adequate notice to AGIA.

I.     **AGIA'S CLAIMS ARE BASED ON TWO FALSE PREMISES: THAT THE
SERVICE AGREEMENT PRECLUDES MEDEX FROM SOLICITING
"ELIGIBLE MEMBERS" AND THAT AGIA HAS PROVIDED MEDEX WITH
"TRADE SECRETS."**

AGIA sets forth, at page 6 of its Memorandum, the paragraphs of the Service Agreement
that it contends preclude MEDEX from using "Eligible Member data."  A plain reading of the
contractual language establishes that although MEDEX may not *disclose* "Eligible Member
data" to a third party (¶ 12), there is no prohibition on the *use* of such data.  AGIA's assertion to
the contrary has no basis in the contract itself.

AGIA also asserts that solicitation of "Eligible Members" is barred by Addendum A to
the Service Agreement, which provides that MEDEX may not "communicate directly with
*representatives of* [AGIA's] Participating or Prospective Groups" absent AGIA approval.  The
import of this paragraph is clear:  AGIA does not wish MEDEX to communicate directly with
the affinity groups themselves.  There is nothing in the Service Agreement, however, that
precludes MEDEX from contacting the members themselves.  (To construe the contract, as
AGIA does, to suggest that MEDEX could never communicate directly with members of the
affinity groups would suggest that MEDEX, while obligated to provide travel services, would be
precluded from "communicating" with the Eligible Members who sought assistance.)

Because AGIA agreed to provide the member data to MEDEX without a use restriction,
it cannot now be heard to argue that the Uniform Trade Secrets Act precludes MEDEX from
soliciting members when the contract allows MEDEX to do so.  If, as AGIA asserts, a "trade
secret" cannot be used for customer solicitations, information provided to MEDEX without a
restriction on such use necessarily means that AGIA has failed to take the necessary steps to

ensure trade secret protection. *See Ellicott Mach. Corp. v. Wiley Mfg. Co.*, 297 F. Supp. 1044, 1053 (D. Md. 1969).[2]

## II.    AGIA'S CLAIMS ARE NOT RIPE.

AGIA bases its assertions of irreparable harm on MEDEX's supposed use of customer data. As set forth previously, however, MEDEX has made no use of customer data and has agreed to provide two weeks' notice before using such data (*if* it ever decides to use the data). Although AGIA makes much of the fact that MEDEX, for a brief period, informed Eligible Members placing incoming calls to MEDEX that they could call a toll number to learn about MEDEX services, MEDEX made no use of AGIA customer data in doing so. It merely offered its phone number to Eligible Members who called MEDEX. Now, even that offer has been removed from the voice recording. *See* Mair Decl. at ¶ 10.

## III.    THE HARM TO MEDEX WOULD BE SIGNIFICANT.

As set forth in the accompanying Declaration of David L. Mair, forcing MEDEX to transfer its phone numbers to AGIA would significantly disrupt its business and impose a large burden on 1 million MEDEX customers. Conversely, AGIA will suffer no harm if its motion is denied. It still will have at least two weeks' advance notice of any intended use of its member data by MEDEX – more than ample time to seek a TRO, if necessary. There is no ongoing activity – not even a recorded voice message – that could be deemed harmful to AGIA.

---

[2]  AGIA's Gramm-Leach-Bliley Act argument is similarly infirm. Not only does the Act not provide a private cause of action, *see* 15 U.S.C. § 6805, but AGIA cannot invoke the Act to prohibit a use allowed by the Service Agreement. Moreover, what AGIA claims is a violation of the Act – the message for incoming callers to MEDEX's toll-free numbers – does not implicate the Act because it does not involve a "customer list" or other protected data. MEDEX merely answered incoming calls.

**IV.    AGIA HAS NO ENTITLEMENT TO THE RELIEF IT SEEKS.**

AGIA does not limit is requested relief to a limitation on uses of customer data.  Rather, it seeks a far-reaching order declaring that "AGIA Eligible Member Data consisting of the names, addresses and certain other basic information of AGIA's Eligible Members is being misappropriated by Medex;" ordering the transfer of MEDEX's telephone numbers – owned and serviced by MEDEX and used by 1 million MEDEX customers – to AGIA; and precluding MEDEX from using customer data for *any* purpose.  Not only is there no legal basis for a temporary restraining order, but the requested brief goes far beyond what could reasonably be requested in any event.

<u>**CONCLUSION**</u>

There is no basis for a temporary restraining order or a preliminary injunction.  AGIA improperly seeks to strip MEDEX of MEDEX's own property and to have the court impose restrictions found nowhere in the Service Agreement.  Moreover, AGIA wholly fails to demonstrate any imminent harm or any other reason for temporary or preliminary relief.  The Court should deny the motion and allow the parties to resolve their dispute in arbitration, as provided for in the Service Agreement.

Respectfully submitted,

Dated: January 30, 2007

**/s/ Creighton R. Magid**
Creighton R. Magid (D.C. Bar#476961)
Dorsey & Whitney LLP
Washington Square
1050 Connecticut Avenue, NW, Suite 1250
Washington, D.C. 20036
(202) 442-3000 (telephone)
(202) 442-3199 (facsimile)

Counsel For Defendant
**MEDEX ASSISTANCE CORPORATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.G.I.A., INC., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Civil Action No. 07-CV-105-RCL |
| | ) |
| MEDEX ASSISTANCE CORPORATION, | ) |
| | ) |
| **Defendant.** | ) |

## DECLARATION OF DAVID L. MAIR IN SUPPORT OF
## OPPOSITION TO MOTION FOR TEMPORARY RETRAINING ORDER

I, DAVID L. MAIR, hereby declare as follows:

1.     I am Director, Client Relations, for MEDEX Assistance Corporation ("MEDEX"), the defendant in this matter.  I am over the age of 21 years and understand the obligations of an oath.  My statements given herein are made as though I were present in a courtroom.  I affirm that the facts stated herein are based on my personal knowledge, except where specifically noted, and are true and correct to the best of that knowledge.

2.     MEDEX is in the business of providing travel assistance.  It has over 800 corporate clients and serves approximately 1 million individual members.

3.     As part of its service offerings, MEDEX provides its clients' members with MEDEX toll-free telephone numbers with which to reach assistance coordinators at MEDEX's Emergency Response Center.  Those toll-free numbers can be used by clients' members anywhere in the United States.  MEDEX pays for, owns, and services the toll-free numbers. MEDEX typically serves multiple clients' members through each of its toll-free numbers.

4.     MEDEX also provides all of its roughly 1 million individual members with a single toll number – (410) 453-6330 – to reach the Emergency Response Center from anywhere

in the world. Members are directed on their individual membership cards to call the number

collect for assistance from anywhere outside North America.

     5.     Until January 1, 2007, MEDEX provided travel assistance to members of various

affinity groups pursuant to a Service Agreement with A.G.I.A., Inc. ("AGIA").

     6.     On November 16, 2006, by letter from David McCarty, AGIA terminated the

Service Agreement between AGIA and MEDEX. According to the letter, the termination was

effective as of the close of business on December 31, 2006.

     7.     AGIA has demanded, and continues to demand, that MEDEX transfer to AGIA

the six toll-free telephone numbers used by MEDEX to serve members of, among other clients,

AGIA's client affinity groups. AGIA has also demanded, and continues to demand, that

MEDEX transfer to AGIA the toll number – (410) 453-6330 – used by MEDEX to provide

worldwide emergency service to all of its roughly 1 million individual members. An example of

AGIA's demands may be found at Exhibit 5 to AGIA's Memorandum in support of its motion

for temporary restraining order.

     8.     Transfer of the numbers would create chaos. MEDEX's toll free numbers are

used to serve multiple clients' members. Transferring MEDEX's numbers to AGIA –

particularly in the timeframe AGIA has demanded – would seriously impede efforts by clients of

MEDEX's other clients to reach MEDEX, causing not only customer confusion and frustration

but threatening MEDEX's fundamental business relationships. A transfer of the toll number,

which serves 1 million members worldwide, would cause even more disruption.

     9.     AGIA also has demanded that MEDEX return all "Eligible Member data"

provided to MEDEX during the term of the Service Agreement. Not only does the Service

Agreement not require, or provide for, the return of such data, it is necessary for MEDEX to

retain such data for audit verification, regulatory compliance, maintenance of case records (certain of which MEDEX cannot destroy or turn over to AGIA under the terms of HIPAA), medical service follow-up, potential future complaint review and resolution, legal defense, and loss trend analysis, among other purposes.

10.    After receiving notice that AGIA intended to terminate the Service Agreement, MEDEX agreed to inform all AGIA "Eligible Members" who called MEDEX after December 31, 2006, that On Call International, LLC had replaced MEDEX as their service provider. Beginning on January, 1, 2007, MEDEX has informed all AGIA "Eligible Members" who have called MEDEX that On Call International, LLC was their new service provider and has furnished telephone numbers for On Call International, LLC provided by AGIA.  A transcript of the original automated message is attached hereto as Exhibit A.  After a short while, MEDEX replaced the original message with a new automated message, a transcript of which is attached hereto as Exhibit B.

11.    MEDEX has made no use of customer data provided by AGIA for any solicitation of AGIA Eligible Members.  MEDEX has not yet decided whether it would ever use customer data (such as name and address) to offer MEDEX services to the Eligible Members.  MEDEX has made clear to AGIA, however, that it will not attempt any such solicitation without a minimum of 14 days' advance notice to AGIA.  MEDEX is willing to enshrine this promise in a consent order, if need be.

12.    AGIA, in its motion papers, has raised the specter of AGIA members calling MEDEX's toll free numbers in medical emergencies from "remote part[s] of the world, with unreliable phone service," then needing to call a second number to reach AGIA's new service provider, On Call International, LLC.  As AGIA well knows, this scenario is farfetched.  As I

stated previously, MEDEX's toll free numbers are accessible only from the United States. All medical emergency calls from outside the United States are handled by (410) 453-6330. A trained MEDEX Emergency Response Center coordinator answers all calls to that number. MEDEX trains its Emergency Response Center coordinators to remain on the line with a caller in an emergency situation or, where appropriate, to instruct the caller to dial the local equivalent of 911. It is simply not plausible that a caller in an emergency situation would be asked to call another number for assistance.

13.    In its Complaint, AGIA asserts that "MEDEX owes [AGIA] approximately $735,000 in unearned premiums" and that "MEDEX has yet to make a payment of said amount to AGIA." AGIA fails to mention the fact that MEDEX has agreed to pay AGIA all unearned premiums as soon as the amount for calendar year 2006 can be calculated, but the AGIA has failed, despite MEDEX's repeated requests, to provide the data necessary to make such a calculation.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

January 30, 2007

David L. Mair

4

# EXHIBIT A

# Civil Action No. 07-CV-105-RCL

**Phone Script - Draft**

Hi. This is Jackie at MEDEX with an important message for EA+ participants.

For the past seven years, MEDEX has been honored to provide the benefits behind EA+. The many compliments shared with us confirm the value your association found in our work. Thank you.

Effective January 1, your group administrator made a change, and MEDEX is no longer working with EA+. We'll give you the number for the new company in just a moment.

As a leader in travel assistance, MEDEX offers you and your family programs that let you pick the price and benefits that best fit your needs whether it's for one trip or one year. We'd love to help you. To learn more, please call 410-453-6367.

To reach the new provider, please call On Call International collect at 603-328-1752 or toll-free in the US at 866-816-2073.



EXHIBIT

A

# EXHIBIT B

# Civil Action No. 07-CV-105-RCL

Hi, this is David at MEDEX Assistance with an important message for EA+ participants.

For the past 7 years, MEDEX has been honored to provide the benefits you know as EA+. We've enjoyed working with you and your association and we want to thank you for the many compliments you've shared with us during that time. It has been our privilege to work with you.

Effective January 1st, your group administrator made a change and MEDEX is no longer working with EA+. To reach the new provider, please call On Call International, toll free at 866-816-2073 or collect at 603-328-1752.

If you had a medical situation with MEDEX prior to Dec 31st, please call 410-453-6300.



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **A.G.I.A., INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 07-CV-105-RCL** |
| | ) |
| **MEDEX ASSISTANCE CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>ORDER</u>

Upon consideration of Plaintiff's Application For Temporary Restraining Order And

Preliminary Injunctive Relief, Defendant's Opposition thereto and for good cause shown, it is

hereby this _____ day of _____, 2007,

ORDERED, that Plaintiff's Application For Temporary Restraining Order And

Preliminary Injunctive Relief be, and is hereby, denied.


_____
ROYCE C. LAMBERTH, Judge


COPIES:

Creighton R. Magid, Esquire
Dorsey & Whitney LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C.  20036

Stephen M. Pavsner, Esquire
Lawrence R. Holzman, Esquire
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland  20770