UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.G.I.A, Inc., | : |
|    Plaintiff, | : |
| vs. | :  CA No.: 07-CV-105 RCL |
| MEDEX ASSISTANCE CORPORATION, | : |
|    Defendant. | : |

**PLAINTIFF'S REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFF'S APPLICATION FOR TRO AND PRELIMINARY INJUNCTION**

**I.  PLAINTIFF ONLY SEEKS THE TRANSFER OF PHONE NUMBERS DEDICATED TO AGIA'S ELIGLE MEMBERS.**

MEDEX' opposition misstates Plaintiff's request. Plaintiff's application only seeks the transfer of "The dedicated toll free numbers…." (Application at page 1, paragraph 1.) Plaintiff's points and authorities make it clear that AGIA is only seeking transfer of dedicated lines, i.e. those used solely by AGIA's Eligible Members. (Plaintiffs points and authorities at pages 5 & 11.) At page 4, paragraph 11 of his original declaration, Mr. McCarty of AGIA specifically identified the five lines he believed to be dedicated, to wit:

    (800)527-0218
    (877)773-3432
    (800)698-5688
    (877)565-2542
    (800)586-0193

Some of these numbers are repeated in Mr. McCarty's declaration as some relate to several different affinity groups. Plaintiff is not seeking the (410) 453-6330 collect number as suggested by MEDEX in its opposition. As explained in Mr. McCarty's

supplemental declaration, he has called all of these numbers and now believes only four are dedicated and that (801) 527-0218 may also be used by others.

Mr. McCarty's original declaration explains the nature of the dedicated toll free lines in great detail. He specifically states that the dedicated lines are used solely by AGIA members. He explains in detail his discussions and correspondence with Mr. Mair regarding the lines. In none of the conversations nor in any of the letters from Mr. Mair does Mr. Mair ever suggest the lines in question serve anyone other than Eligible Members. In Mr. McCarty's supplemental declaration filed herewith, he responds to Mr. Mair's declaration and details his recent experience in calling the five phone numbers listed above.

Mr. Mair's declaration fails to rebut Mr. McCarty's. Significantly, Mr. McCarty states: "MEDEX <u>typically</u> serves multiple clients' members through each of its toll-free numbers." (Declaration of Mair at page 1, paragraph 3, emphasis added.) Mr. Mair does not deny that at least some of the five specific numbers AGIA identified are dedicated solely to Eligible embers.

It is glaringly obvious that at least four of these lines are dedicated solely to AGIA Eligible Members. If this were not so, MEDEX could not use the automated messages it admits to in Mr. Mair's declaration. Are we to believe that anyone other that Eligible Members are being given the phone scripts attached as Exhibits A and B to Mr. Mair's declarations advising them that MEDEX has been terminated and they should call the new provider?

As Plaintiff explained in its moving papers, some Eligible Members have non-dedicated lines. Presumably, as to these, a MEDEX operator answers their calls and

refers them to On Call. However, the majority of Eligible Members have dedicated lines which, when they call, get MEDEX' automatic message. What possible harm could be done to MEDEX by transferring these dedicated lines to AGIA or its new provider?

## II.     AGIA's CLAIMS ARE RIPE.

An injunction under Federal Rule of Civil Procedure section 65 is appropriate to protect against threatened harm. The Maryland Uniform Trade Secret Act Specifically states: "Actual or threatened misappropriation may be enjoined." Md COMMERCIAL LAW Code Ann. § 11-1202 (a)

AGIA's retention of the Eligible Member Data after termination of the contract is an actual misappropriation. MEDEX' repeated statements that it may use the Eligible Member Data in the future is a threatened misappropriation. MEDEX' promise to give 14 days prior notice is meaningless particularly in light of its recent active solicitation by voicemail. Even MEDEX' script B includes gratuitous statements designed to solicit the Eligible Members rather than simply provide them with the phone number for On Call.

## III.    THERE IS NO HARM TO MEDEX.

The only claim of harm MEDEX makes in its reply papers is with respect to the impact of the transfer of *all* toll free numbers. However, AGIA never sought the transfer of all numbers. It only seeks the transfer of dedicated numbers.

MEDEX makes no showing it would suffer any harm by being enjoined from (1) Using or disclosing Eligible Member Data; or (2) Soliciting Eligible Members.

3

### IV. THE GRAMM-LEACH-BLILEY ACT IS RELEVANT.

Plaintiff is not seeking to state a private cause of action based on the GLBA. Plaintiff is arguing that the GLBA should be taken into account when considering the public interest factor of the test for issuing a preliminary injunction.

MEDEX misconstrues AGIA's argument regarding the GLBA at page 5, footnote 2 of its opposition. AGIA does not take the position that the voice message violated the GLBA. AGIA takes the position that any use of the Eligible Member Data to solicit would be a violation.

MEDEX ignores the clear language of the governing FTC regulation protecting the privacy of these Eligible Members. MEDEX received the Eligible Member Data under the exception in 15 C.F.R. §313.14. Therefore, MEDEX can only use the information "to carry out the activity covered by the exception." 15 C.F.R. §313.11(a)(1)(iii). This means MEDEX is limited to providing the agreed services to the customers and is forbidden by federal law from marketing its own products to them.

### V. MEDEX' ARGUMENT THAT ITS "USE" OF THE DATA TO SOLICIT ELEGIBLE MEMBERS IS NOT EXPRESSLY PROHIBITED, AND IS THEREFORE ALLOWED, IS SPECIOUS.

MEDEX' Argument completely ignores Plaintiff's legal arguments with respect to the interpretation of contracts, the implied covenant of good faith and the definition of trade secrets. In addition to the question of contract interpretation, there is also the question of statutory interpretation. As the court stated in *Catalyst & Chem. Serves v. Global Ground Support,* 350 F. Supp. 2d 1, 16-19 (D.D.C. 2004) "The owner of a trade secret may, without losing protection, disclose it to a licensee, an employee, or a stranger, if the disclosure is made in confidence, express or implied."

4

At Paragraph 9 of Mr. Mair's declaration, he takes the position that the Eligible Member Data is subject to HIPAA. Plaintiff objects on the basis that this calls for legal conclusion and lacks foundation. Is Mr. Mair referring simply to the Eligible Member Data or is he referring to more detailed information with respect to emergency services actually rendered to Eligible Members? In any event, to the extent the Eligible Member Data is subject to HIPAA any marketing activities by MEDEX would be prohibited. 45 C.F.R. Section 164.508.

## VI.     THE ELIGIBLE MEMBER DATA IS A TRADE SECRET.

Defendant made virtually no attempt to rebut AGIA's argument that the Eligible Member Data is a trade secret. MEDEX' only argument is that since the information was provided to MEDEX without an express restriction on its use, AGIA necessarily failed to properly protect the trade secret. MEDEX sole authority is Ellicott Mach. Corp. v. Wiley Mfg. Co. 297 F. Supp. 104, 153 (D.Md 1969). Both the Ellicott case and the Space Aero Products Co. v .R.E. Darling Co., 238 Md. 93, 208 A. 2d 74 (1965) which it relies on, support AGIA's position rather than MEDEX'. (Note, both cases were decided prior to Maryland's adoption of the Uniform Trade Secrets Act.) In both cases the court found a trade secret despite limited disclosure to the defendant or third parties. The court stated in *Space Areo* as follows:

> Even though a process or method may be the subject of a trade secret, a substantial element of secrecy must exist before the owner of the method is entitled to judicial protection. Absolute secrecy is not essential but a substantial element of secrecy must exist so that there would be difficulty in others properly acquiring the information. A trade secret owner, however, does not abandon his secret by a limited publication for a restricted purpose.

*Space Areo Products Co. v R.E. Darling Co. Inc.,* 238 Md 93, 110, 208 A. 2d 74, 82, 110. (Internal citations omitted.)

5

In Space Areo the defendants argued that knowledge of the trade secret by various employees not subject to a confidentially agreement and a supplier of raw materials negated the existence of a trade secret. The court responded as follows:

> Branbenburg's [the supplier's] knowledge of the process, however, complete, did not negate the substantial element of secrecy necessary to the existence of a trade secret.

*Id at.* 238 Md at 112; 208 A. 2d at 83.

It is clear from both the circumstances and the contract that the Eligible Member Data was provided to MEDEX in confidence and for a specific purpose and that MEDEX' use of that Data for any purpose other than performing the Service Agreement is a misappropriation.

Respectfully Submitted,

*/s/ filed via ECF*
By: Lawrence Holzman, Esq. (Bar No. DC466472)
JOSEPH, GREENWALD AND LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301)220-2200
(301)220-1214 (fax)
lholzman@jgllaw.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Reply to Defendant's Opposition to Plaintiff's Application for Temporary Restraining Order and Preliminary Injunctive Relief was served via ECF to all parties.

*/s/ filed via ECF*
Lawrence R. Holzman