**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| A.G.I.A., INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action No. 07-CV-105-RCL |
| v. | ) | |
| | ) | |
| MEDEX ASSISTANCE CORPORATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

**SUPPLEMENTAL DECLARATION OF DAVID L. MAIR IN SUPPORT OF OPPOSITION TO MOTION FOR TEMPORARY RETRAINING ORDER**

I, DAVID L. MAIR, hereby declare as follows:

1. I am Director, Client Relations, for MEDEX Assistance Corporation ("MEDEX"), the defendant in this matter. I am over the age of 21 years and understand the obligations of an oath. My statements given herein are made as though I were present in a courtroom. I affirm that the facts stated herein are based on my personal knowledge, except where specifically noted, and are true and correct to the best of that knowledge. I make this supplemental Declaration in response to the Supplemental Declaration of David H. McCarty and A.G.I.A., Inc.'s Reply to Defendants' Opposition to Plaintiff's Application for TRO and Preliminary Injunction.

2. In contrast to AGIA's position as set forth in David McCarty's November 29, 2006, letter to me (which letter is attached as Exhibit 5 to Plaintiff's Memorandum of Law in Support of Application for Temporary Restraining Order and Preliminary Injunctive Relief), AGIA now takes the position that it does not seek the transfer of any of MEDEX's toll lines, including (410) 453-6330. This directly undercuts AGIA's argument, at page 17 of its Memorandum of Law, that an injunction would "serve the public interest" by obviating the supposed need for an injured or ill Eligible Member "stranded in a remote part of the world, with

unreliable phone service" to "make a second call" to obtain emergency assistance. As I noted in my January 31, 2007, declaration, the (410) 453-6330 number is the only number to handle calls from outside the United States; the ownership of the toll-free numbers thus has no bearing on the "public interest" as defined by AGIA.

3. David McCarty's claim that, while posing as a member of the American Optometric Association on January 31, 2007, he was put on hold for 5 minutes after dialing the MEDEX emergency number (800) 527-0218, simply cannot be true. MEDEX automatically tracks every incoming telephone call. On January 31, 2007, the longest wait time (that is, the time between the first ring and connection with an Emergency Response Center coordinator) on any MEDEX number was 44 seconds. (The average wait time for that number in January 2007 was 7 seconds.)

4. Incidentally, MEDEX emergency number (800) 527-0218, one of the numbers to which AGIA claims an entitlement, is an emergency number printed on the member cards of every MEDEX client, except for the fewer than 12 MEDEX clients who have dedicated emergency lines.

5. I was astounded to read Mr. McCarty's assertion, at paragraph 7 of his Supplemental Declaration, that AGIA has given MEDEX "everything they need, and then some" to calculate the amount of unearned premiums owed. Mr. McCarty's statement is plainly and simply false. The calculation of the fees payable under the Service Agreement and the unearned portion of those fees requires accurate financial and eligibility data, as AGIA acknowledges in its Memorandum of Law. AGIA provided such data through November, 2006. On January 15, 2007, AGIA's Jim Evans sent several of the remaining necessary files to MEDEX by email, then promptly recalled the email. See Jim Evans Jan. 16, 2007, email to MEDEX's Deneen Detorie,

attached hereto as Exhibit A. AGIA, through its counsel, then outright refused to send the remaining financial data, claiming, among other things, that it did not understand what information was required – even though AGIA had sent MEDEX the information regularly until December, 2006. See January 23, 2007, letter of Michael Schley to F. Matthew Ralph, attached hereto as Exhibit B.

5. Despite MEDEX's repeated requests, AGIA has refused to provide the necessary December data. Without the data from AGIA, MEDEX cannot calculate and pay to AGIA the proper amount for unearned fees. As I have repeatedly told Mr. McCarty since mid-December, 2006, MEDEX will pay AGIA whatever is properly owed within one week of receiving the necessary financial and eligibility data – data that AGIA had been providing monthly until December.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

February 4, 2007

David L. Mair

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 5th day of February, 2007, a copy of the foregoing Supplemental Declaration of David L. Mair in support of Opposition to Motion for Temporary Restraining Order was sent by electronic means and hand delivered to:

Stephen M. Pavsner, Esquire (spavsner@jgllaw.com)
Lawrence R. Holzman, Esquire (lholzman@jgllaw.com)
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770

/S/ CREIGHTON R. MAGID

Creighton R. Magid (D.C. Bar#476961)
Dorsey & Whitney LLP
Washington Square
1050 Connecticut Avenue, NW, Suite 1250
Washington, D.C. 20036
(202) 442-3000 (telephone)
(202) 442-3199 (facsimile)
Counsel For Defendant
**MEDEX ASSISTANCE CORPORATION**

# EXHIBIT A

# Civil Action 07-cv-105-RCL

---

**From:** Jim Evans [mailto:JEvans@AGIA.com]
**Sent:** Tuesday, January 16, 2007 2:07 PM
**To:** Deneen Detorie
**Subject:** Files sent from AGIA on 1/15

Deneen,

The files were sent to you in error. I have attempted to recall the messages, but if you have the files please delete them and disregard. Sorry for the confusion,

Jim Evans

The contents of this email may contain confidential and proprietary information. It is intended for the use only of the intended recipient.

If the receiver of this message is not the intended recipient, the receiver is hereby notified that any dissemination, distribution, publication or copying of this email or any attachment is strictly prohibited. If this email was erroneously addressed to you, please delete all copies from your system, and notify IMSupportGroup@agia.com. Thank you.



# EXHIBIT B

# Civil Action 07-cv-105-RCL




Please reply to
our Santa Barbara Office:
311 E. Carrillo Street
Santa Barbara, CA 93101
T: 805-966-2940
F: 888-453-1535
E: MSchley@slglegal.com

January 23, 2007

F. Matthew Ralph
Dorsey & Whitney LLP
By Email: ralph.matthew@dorsey.com

Re: **MEDEX Assistance Corporation / A.G.I.A., Inc.**

Dear Matt:

I received your letter of January 22 and have asked AGIA about the "enrollment registers" you requested for purposes of calculating your client's debt to AGIA. Also yesterday, David Mair wrote to Dave McCarty requesting the "monthly report of enrollments" for the same stated purpose. It seems that both requested items are terms of art used at MEDEX. AGIA personnel are not sure just what is being requested. Please provide, or ask your client to provide, a description of what is being requested, as AGIA is not familiar with a report by either name.

If MEDEX is requesting the encrypted data file containing personally identifiable information for all of the enrolled EA+ members at December 31, 2006, AGIA will not provide this. MEDEX does not need personally identifiable information relating to the EA+ members in order to calculate its debt to AGIA. Furthermore, AGIA would not, at this point, provide EA+ member data to MEDEX, given that (i) you have repeatedly asserted that MEDEX has a right to use the member data for purposes outside those stated in the Service Agreement and (ii) MEDEX actually engaged in unauthorized direct solicitations of sales to the EA+ members during the first two weeks of January without AGIA's knowledge and at a time when you had promised to give prior notice of sales solicitations.

There are other means to provide verification of the final figures without AGIA disclosing personally identifiable member information to MEDEX. If MEDEX is seeking to verify the final figures, AGIA will be glad to provide verification through other means. MEDEX can contact Andrew Dowen, CFO of AGIA, to discuss this. Of course, MEDEX should have requested this information long before now if it intended to make a timely payment.

Regarding your final statement that "a deal was made" for a February 28 payment of the unearned premium, please be more specific. Who made the deal? What were the terms? When and how was it made and communicated? Neither of your two letters asserting such a deal has provided this information. We have made appropriate inquiries, and no one at AGIA is aware of such a deal. All we know is that Mike Kelly, as a neutral party, made a good faith effort to



EXHIBIT B

mediate a resolution of issues between AGIA and MEDEX, without success. If you have any information indicating to the contrary, please provide it.

Sincerely,

Michael D. Schley

Cc: Ian M. Guthrie