UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.G.I.A., INC., <br><br>                 Plaintiff, <br><br> v. <br><br> MEDEX ASSISTANCE CORPORATION, <br><br>                 Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-CV-105-RCL <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT'S MOTIONS FOR PARTIAL RECONSIDERATION AND VACATION OF THE FEBRUARY 5, 2007 ORDER AND RELATED STAY

Defendant MEDEX Assistance Corporation ("MEDEX") hereby moves, pursuant to Fed. R. Civ. P. 54(b) or, alternatively, Fed. R. Civ. P. 59(e), for partial reconsideration and vacation of the Court's Order of February 5, 2007 ("Order"). Specifically, MEDEX asks that the Court reconsider those portions of its Order directing MEDEX to transfer ownership of telephone lines to Plaintiff. MEDEX also hereby moves, pursuant to Fed. R. Civ. P. 62(c), for a stay of Paragraph 8(3) of the Order pending resolution of MEDEX's Motion for Partial Reconsideration and Vacation and subsequent appeal. A Memorandum in support of these Motions, a Supplemental Declaration of David L. Mair, and two Proposed Orders will be filed herewith.

Respectfully submitted,

Dated: February 8, 2007

/S/ CREIGHTON R. MAGID
Creighton R. Magid (D.C. Bar # 476961)
Dorsey & Whitney LLP
Washington Square
1050 Connecticut Avenue NW, Suite 1250
Washington, D.C. 20036
(202) 442-3000 (telephone)
(202) 442-3199 (facsimile)
Counsel for Defendant
**MEDEX ASSISTANCE CORPORATION**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 8th day of February, 2007, copies of the foregoing Defendant's Motions For Partial Reconsideration And Vacation Of The February 5, 2007 Order And Related Stay, Memorandum In Support Of Defendant's Motion For Partial Reconsideration And Vacation Of The February 5, 2007 Order, and Proposed Orders were sent by electronic means and mailed by first-class mail, postage prepaid to:

>   Stephen M. Pavsner, Esquire (spavsner@jgllaw.com)
>   Lawrence R. Holzman, Esquire (lholzman@jgllaw.com)
>   Joseph, Greenwald & Laake, P.A.
>   6404 Ivy Lane, Suite 400
>   Greenbelt, Maryland 20770

/S/ CREIGHTON R. MAGID
_____
Creighton R. Magid

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A.G.I.A., INC., )
 )
        Plaintiff, )
 ) Civil Action No. 07-CV-105-RCL
v. )
 )
MEDEX ASSISTANCE CORPORATION, )
 )
        Defendant. )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION AND VACATION OF THE FEBRUARY 5, 2007 ORDER**

Dated: February 8, 2007

Creighton R. Magid (D.C. Bar # 476961)
Dorsey & Whitney LLP
Washington Square
1050 Connecticut Avenue NW, Suite 1250
Washington, D.C. 20036
(202) 442-3000 (telephone)
(202) 442-3199 (facsimile)

Counsel for Defendant
**MEDEX ASSISTANCE CORPORATION**

# TABLE OF AUTHORITIES

Page

**CASES**

*Cobell v. Norton*, 224 F.R.D. 266 (D.D.C. 2004) ..................................................3, 4

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1 (D.D.C. 1997) ..................................................5

*Consarc Corp. v. U.S. Treasury Dept.*, 71 F.3d 909 (D.C. Cir. 1995) ..................5

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) ..................10

*Hutchins v. Zoll Med. Corp.*, 430 F. Supp. 2d 24 (D. Mass. 2006) ..................6

*Lance v. United Mine Workers of Am. 1974 Pension Trust*, 400 F. Supp. 2d 29 (D.D.C. 2005) ..................4

*Nat'l Ry. Labor Conference v. Int'l Ass'n of Machinists & Aerospace Workers*, 830 F.2d 741 (7th Cir. 1987) ..................9

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004) ..................4

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995) ..................7

*Phillip v. Fairfield Univ.*, 118 F.3d 131 (2d Cir. 1997) ..................5

*Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004) ..................9

*Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309 (9th Cir. 1996) ..................6

*Rosemont Ent., Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966) ..................5

*Singh v. The George Washington Univ.*, 383 F. Supp. 2d 99 (D.D.C. 2005) ..................3, 4

*Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338 (S.D. Miss. 2003) ..................6

*Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir. 1986) ..................7

*Towson University v. Conte*, 862 A.2d 941 (Md. 2004) ..................8

*U.S. v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 988 (D.D.C. 2006) ..................11

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981).................................................................4

*Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806
    (7th Cir. 1958)..............................................................................................................5

**<u>RULES</u>**

Fed. R. Civ. P. 54(b) ...................................................................................................3

Fed. R. Civ. P. 59(e) ................................................................................................4, 9

Fed. R. Civ. P. Rule 62(b) ..........................................................................................9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.G.I.A., INC., <br><br> **Plaintiff,** <br><br> v. <br><br> MEDEX ASSISTANCE CORPORATION, <br><br> **Defendant.** | Civil Action No. 07-CV-105-RCL |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION AND VACATION OF THE FEBRUARY 5, 2007 ORDER

The Court's February 5, 2007 Order (1) bars MEDEX from using or disclosing EA+ Eligible Member data and (2) requires MEDEX to transfer four toll-free telephone numbers to AGIA. This Motion for Partial Reconsideration and Vacation does not challenge the portions of the February 5, 2007 Order related to Eligible Member data. This Motion addresses only the portions of the Order related to transfer of telephone lines.

The order to transfer telephone lines impermissibly alters the status quo pending arbitration. Because the telephone lines – which MEDEX has paid for, has long operated, and has no contractual obligation to provide to AGIA – have nothing to do with AGIA's claims (which involved the alleged misuse or threatened misuse of trade secrets), the Order also goes beyond the scope of the issues before the Court. The Court's ruling also unnecessarily prejudges issues to be arbitrated and grants AGIA substantive relief that it was unable to obtain through arms-length negotiation. Accordingly, MEDEX respectfully asks the Court to reconsider and vacate that portion of its Order requiring MEDEX to transfer telephone lines to AGIA.

## **RELEVANT UNDISPUTED FACTS**

On November 16, 2006, AGIA terminated its Service Agreement with MEDEX. Ex. 3 to Plaintiff's Memorandum. The termination was effective as of January 1, 2007. *Id.* In conjunction with the termination, AGIA demanded, among other things, that MEDEX transfer to AGIA ownership of MEDEX-owned toll free and collect telephone numbers "dedicated" to the EA+ program. *Id.* When MEDEX refused AGIA's demand to transfer the telephone numbers on the lowball payment terms AGIA offered, AGIA brought this lawsuit.

It is undisputed that MEDEX has paid for and owns the rights to use the four telephone lines at issue. It is equally undisputed that the Service Agreement does not in any respect provide for ownership of the telephone lines by AGIA or for transfer of the telephone lines to AGIA. It is further undisputed that AGIA has failed to identify any contractual or legal right to the telephone lines. (Indeed, in its briefing in support of its motion for a TRO and preliminary injunction, AGIA did not even suggest that it had any legal right or entitlement to the telephone lines; rather, it merely sought to bolster the "public interest" element of the preliminary injunction test by raising the specter that an Eligible Member of a AGIA Participating Group calling from a remote corner of the world would have difficulty placing a second call to On Call, the provider AGIA selected to replace MEDEX.[1])

AGIA established new telephone lines for its EA+ members to call effective January 1, 2007. Ex. 9 to Plaintiff's Memorandum. AGIA provided those numbers to its members in mid-December. Ex. 9 and 10 to Plaintiff's Memorandum.

---

1   As MEDEX has noted, the scenario raised by AGIA is disingenuous, as none of the telephone numbers at issue is used for calls outside the United States. AGIA has not alleged, or submitted any evidence to prove, that any Eligible Member's access to emergency help had actually been delayed or interrupted since MEDEX's responsibility for servicing the EA+ Plan ended on January 1, 2007.

MEDEX agreed, as a display of good will, not to immediately redeploy the four telephone lines at issue, and, through mid-February, to inform Eligible Members who called the numbers of the new EA+ telephone numbers for On Call. Exhibit 9 to Plaintiff's Memorandum. MEDEX has fulfilled its promise, and continues to do so. Declaration of David L. Mair in Support of Opposition to Motion for Temporary Restraining Order ("Mair Decl."), ¶ 10.

As counsel for MEDEX pointed out at the hearing, however, MEDEX has already made arrangements to redeploy at least one of the numbers to another client, and would incur significant reputational damage should the Court's Order preclude MEDEX from redeploying the number. Supplemental Declaration of David L. Mair in Support of Defendant's Motion for Partial Reconsideration and Vacation of February 5, 2007 Order ("Supp. Mair Decl."), ¶ 5.[2]

## LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure provides that

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b). Rule 54(b) "governs reconsideration of orders that do not constitute final judgments in a case" and permits revision of such orders "as justice requires." *Singh v. The George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citing *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). "Justice may require revision when the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or

---

2  Mr. Mair is currently traveling overseas and is unable to access a scanner in order to submit a signed statement. He will submit a signed statement as soon as he is able.

significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Id.* at 101 (quoting *Cobell*, 224 F.R.D. at 272).

Alternatively, Rule 59(e) permits a Court to alter or amend a judgment if it finds "the need to correct clear error or to prevent manifest injustice." *Lance v. United Mine Workers of Am. 1974 Pension Trust*, 400 F. Supp. 2d 29, 31 (D.D.C. 2005).

## ARGUMENT

### I. THE COURT'S ORDER TO TRANSFER TELEPHONE LINES WAS OUTSIDE THE SCOPE OF THE ISSUES BEFORE THE COURT AND CLEARLY ERRONEOUS

AGIA's application for preliminary injunction sought to preserve the status quo pending arbitration. Ordering MEDEX to transfer ownership of the telephone lines alters the status quo, goes outside the scope of the issues before the Court, and is clearly erroneous. The ownership of the telephone lines, to the extent it was even an issue, should have been submitted to arbitration.

#### A. Transferring the Telephone Lines Would Change the Status Quo, Not Preserve It

The "limited purpose" of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Accordingly, courts should be hesitant to grant the extraordinary interim relief of a preliminary injunction in any particular case, but especially so when such an injunction would alter the status quo prior to a trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (*en banc*) ("a movant seeking a preliminary which upsets the status quo must satisfy a heightened burden").

> Any injury resulting from a preliminary injunction that merely preserves the status quo is not a judicially inflicted injury. Instead, such injury occurs at the hands of a party or other extrajudicial influence. By contrast, an injury resulting from a preliminary injunction that disturbs the status quo by changing the relationship of the parties *is* a judicially inflicted injury.

*Id.* at 978 (emphasis in original).

The D.C. Circuit has defined the *status quo ante* as "the last uncontested status which preceded the pending controversy." *Consarc Corp. v. U.S. Treasury Dept.*, 71 F.3d 909, 913 (D.C. Cir. 1995) (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958)). In *Consarc*, the *status quo ante* involved the existence of a certain amount of money deposited at The Bank of New York in an account in a particular person's name. *Id.* at 912-13. During the controversy, the funds were withdrawn. The Court concluded that the *status quo ante* was ***not*** restored when the proper amount of money was deposited in a different bank in a different person's name. *Id.* Here, the *status quo ante* is that MEDEX owns the right to use telephone lines at issue. The Court has fundamentally altered the status quo by ordering MEDEX to transfer the telephone lines to AGIA. Order, ¶ 8(3). If carried out, the transfer of telephone lines would inflict judicial injury on MEDEX, which has incurred costs related to redeployment of the lines. Supp. Mair Decl., ¶ 5.

### B. It Was Clear Error To Conclude That AGIA Had Any Legal Right to the Telephone Lines

"[W]here an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (quoting *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir.1997)); *accord Rosemont Ent., Inc. v. Random House, Inc.*, 366 F.2d 303, 311 (2d Cir. 1966) ("A preliminary injunction is always a drastic remedy and the one seeking to invoke such stringent relief is obliged to establish

a clear and compelling legal right thereto based on undisputed facts."). The undisputed evidence before the Court shows that AGIA had no legal right to the telephone lines.

Prior to the hearing, MEDEX introduced evidence that "MEDEX pays for, owns, and services the toll-free numbers." Mair Decl., ¶ 3. AGIA does not – indeed, cannot – dispute MEDEX's ownership and control of these telephone lines, which is underscored by AGIA's offer to pay for them. Ex. 5 to Plaintiff's Memorandum. *See* Declaration of John B. Wigle, ¶ 10 (enumerating AGIA's services and responsibilities, which do not include purchasing or maintaining telephone lines); ¶ 16 ("MEDEX provides to the EA+ Eligible Members worldwide 24-hour toll-free (or collect call) telephone assistance"). The discussion in Plaintiff's Memorandum related to the transfer of the telephone lines was extremely limited. At no point has AGIA asserted that it had any legal right to the telephone lines[3], but only that the "public interest" would be better served if AGIA owned them.[4]

The Court's Order erroneously treats the MEDEX-owned telephone numbers as though AGIA owned them or had some legal entitlement to them. *See, e.g.,* Order, ¶ 3 (injunctive relief warranted because AGIA would suffer irreparable harm "if MEDEX is permitted to convert Plaintiff's property to MEDEX's use and benefit").

AGIA argues variously that MEDEX has "no legitimate need for these specific phone numbers," Declaration of David H. McCarthy ("McCarthy Decl."), ¶ 12, that MEDEX has

---

3    MEDEX's reference to the implied covenant of good faith and fair dealing in the Service Agreement does not provide a basis for transfer of the telephone lines. The implied covenant relates to performance of existing contractual obligations; it does not create an obligation to form new contracts. *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 317 (9th Cir. 1996); *Hutchins v. Zoll Med. Corp.*, 430 F. Supp. 2d 24, 34 (D. Mass. 2006); *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 357-58 (S.D. Miss. 2003).

4    The "public interest" is relevant only to the determination, under the Court's four-factor test, whether or not to grant injunctive relief. The putative "public interest" is not supposed to determine the nature of the injunctive relief.

-6-

unreasonably refused to sell them at AGIA's offered prices, *id.*, and that it would be in Eligible Members' best interests "for MEDEX to transfer the dedicated lines to AGIA." *Id.*, ¶ 15. These are negotiating points, not legal rights. Under the guise of a request for "preliminary injunctive relief," AGIA simply asked for something it was unable to obtain in arms-length negotiation.

### C. The Court's Order Unnecessarily Prejudges Issues To Be Decided at Arbitration

The Court's Order relies upon *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995), which notes that the decision to allow federal courts to grant preliminary injunctive relief pending arbitrations is based on a balancing test. "The risk that the arbitrator will be unduly influenced by the court's prior ruling is offset by the necessity of preserving the status quo." *Id.* at 1380-81 (quoting *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 50 (1st Cir. 1986)). By adopting Plaintiff's proposed order, the Court has made rulings that are unnecessary to its determination of AGIA's request for preliminary injunctive relief. AGIA will now use those superfluous rulings in the arbitration. The parties dispute, for example:

- Whether MEDEX has a legal right to use member information to solicit members and therefore whether any such use would be a "misappropriation" of such information;

- Whether AGIA's member information is a trade secret under the Maryland Uniform Trade Secrets Act;

- Whether MEDEX breached the parties' contract and, therefore, whether AGIA has any legal remedies for breach of contract;

The parties agreed to submit disputes such as these to mandatory mediation and/or arbitration. AGIA had no basis for asking the Court to decide these issues. The Court's power to grant injunctive relief is limited to preserving the status quo, not to tilting the scales.

The Court's Order nevertheless concludes that "basic information of AGIA's Eligible Members' is being misappropriated by Medex Assistance Corp.," Order, ¶ 2, that "Plaintiff will

suffer irreparable harm if Medex is permitted to convert Plaintiff's property to Medex's use and benefit and is permitted to solicit AGIA's customers," *id.*, ¶ 3, that "AGIA has a statutory right to injunctive relief pursuant to the Maryland Uniform Trade Secrets Act," *id.*, ¶ 4, and that "AGIA has no adequate remedy at law," *id.*, ¶ 5. None of these rulings were necessary to support the grant of injunctive relief, and none of them supports the transfer of telephone lines. Yet AGIA now has this Court's imprimatur on certain of the positions it will take at the arbitration.[5]

## II. THE ORDER TO TRANSFER TELEPHONE LINES IS UNRELATED TO AGIA'S CLAIMS AND, EVEN IT WERE RELATED, IS NOT NARROWLY TAILORED TO ADDRESS AGIA'S ALLEGED CONCERNS

The transfer of telephone lines is not rationally related to AGIA's claims. AGIA alleges that MEDEX breached the Service Agreement, which is silent as to ownership of telephone numbers. AGIA alleges that MEDEX is violating, or may violate, the Maryland Uniform Trade Secrets Act and the Gramm-Leach-Bliley Act, neither of which has anything to do with telephone lines. AGIA does not allege that it has any legal right to the telephone numbers.

AGIA argued (1) that MEDEX's use of its own telephone lines to tell callers how to obtain additional information about MEDEX's services was a "solicitation" somehow barred by

---

[5] At the hearing, the Court also opined that Addendum A of the Service Agreement contained the type of broad anti-solicitation provision that AGIA was urging. This opinion also prejudges a crucial issue to be arbitrated. Addendum A provides that "MEDEX and its employees, officers and representatives will not communicate directly with ***representatives*** of these Participating or Prospective Groups unless AGIA authorizes MEDEX in writing to do so." Compl., Ex. A. Addendum A does not bar MEDEX from contacting members of Participating or Prospective Groups. The Service Agreement is to be interpreted and applied in accordance with Maryland law. Service Agreement, ¶ 16. Under Maryland law, the language of the contract is controlling, not the parties' intentions. "Maryland courts follow the law of objective interpretation of contracts, giving effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean." *Towson University v. Conte*, 862 A.2d 941, 946 (Md. 2004) (omitting citations).

-8-

the Service Agreement, and (2) that, even though MEDEX had changed its recorded message on to allay AGIA's concern, MEDEX could nevertheless resume its former practice in the future. Even if these arguments were valid, however, the Court's order to transfer ownership of the telephone lines reached far beyond the relief necessary to preserve the status quo pending arbitration. An injunction against using a particular message is one thing, a court-ordered transfer of an important asset is quite another.

A preliminary injunction "must be narrowly tailored…to remedy only the specific harms shown by the plaintiffs." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *see also Nat'l Ry. Labor Conference v. Int'l Ass'n of Machinists & Aerospace Workers*, 830 F.2d 741 (7th Cir. 1987) (reviewing "whether the scope of the injunctive provisions is wider than that necessary to prevent irreparable harm"). The Court could have preserved the status quo by, for example, barring MEDEX from altering its current outgoing messages on the toll-free lines, by ordering MEDEX to record different outgoing messages, by enjoining MEDEX to answer the toll-free lines in person, or by ordering MEDEX to "warm transfer" EA+ callers to other lines designated by AGIA. Instead, the Court improperly transferred legal rights from one party to another.

### III. THE COURT SHOULD STAY TRANSFER OF THE TELEPHONE LINES UNTIL THIS MOTION AND ANY SUBSEQUENT APPEAL ARE RESOLVED

Rule 62(h) permits the Court to stay an order pending a Rule 54 motion. Rule 62(b) permits the Court to stay an order pending a Rule 59 motion.

In determining whether to grant a stay, the Court must assess four factors: (1) the likelihood that the moving party will prevail on the merits of a pending motion or appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). The need to show likelihood of success on the merits is inversely proportional to the degree of irreparable injury. *Id.* at 974.

### A. MEDEX Ultimately Will Succeed on the Merits

For all the reasons set forth in Sections I. through III. above, MEDEX will likely succeed in reversing the order to transfer telephone lines pending arbitration.

### B. MEDEX Will Suffer Irreparable Harm if the Telephone Lines Are Transferred

As discussed above, MEDEX had, prior to the TRO motion, already redeployed at least one of the lines at issue. Supp. Mair Decl., ¶ 5. A court-mandated transfer of the telephone numbers will not only strip MEDEX of valuable assets, but also will cause irreparable damage to MEDEX's relationships with its other clients. *Id.*

### C. Neither AGIA Nor Its Members Runs Any Material Risk of Being Harmed if a Stay Is Not Granted

AGIA has presented no evidence that any EA+ Member has experienced actual delay or interruption of service by virtue of MEDEX's operation of the toll-free lines. MEDEX presented evidence that any such claims are far-fetched. Mair Decl., ¶ 12. Furthermore, AGIA could materially lessen any such risk by making further efforts to inform its EA+ Eligible Members of On Call's new telephone numbers. AGIA presented no evidence that it has made any such efforts beyond a single mailing in mid-December.

### D. The Public Interest Is Not Harmed By Granting a Stay

The public interest is not implicated by this Motion for Stay. This is not a case in which the "public interest" can be equated with the interests of AGIA, whose Eligible Members

-10-

comprise only 1.2% of all members in AGIA's several client groups.[6] *Cf. U.S. v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 988, 990-91 (D.D.C. 2006) (equating plaintiffs to the American public). Even if it were, the alleged harm to AGIA and its Eligible Members has not materialized, and is unlikely to materialize. Therefore, no public interest will be harmed by granting a stay.

## CONCLUSIONS

For the foregoing reasons, MEDEX respectfully requests that the Court reconsider and vacate the portions of its February 5, 2007, Order related to transfer of telephone lines and enter a revised order in the form submitted with this Motion. At the same time, or in the alternative, as may be the case, MEDEX also requests that the Court stay Paragraph 8(3) of its Order pending resolution of this Motion or any subsequent appeal.

Respectfully submitted,

Dated: February 8, 2007

/S/ CREIGHTON R. MAGID
Creighton R. Magid (D.C. Bar # 476961)
Dorsey & Whitney LLP
Washington Square
1050 Connecticut Avenue NW, Suite 1250
Washington, D.C. 20036
(202) 442-3000 (telephone)
(202) 442-3199 (facsimile)

Counsel for Defendant
**MEDEX ASSISTANCE CORPORATION**

---

[6] According to the Declaration of John W. Wigle, AGIA's affinity group clients have approximately 7.4 million members, of whom 92,754 are currently EA+ Eligible Members. Wigle Decl., ¶ 14.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.G.I.A., INC.,<br><br>      Plaintiff,<br><br>v.<br><br>MEDEX ASSISTANCE CORPORATION,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 07-CV-105-RCL<br>)<br>)<br>)<br>) |

## ORDER

Upon consideration of Defendant's Motion for Partial Reconsideration and Vacation of the February 5, 2007 Order, the Court hereby finds that:

1. Paragraph 8(3) of the February 5, 2007 Order alters rather than preserves the status quo pending arbitration.

2. Whether Medex's property right in its telephone numbers should be transferred to AGIA is a matter more properly resolved in arbitration than before this Court.

**IT IS HEREBY ORDERED** that Paragraph 8(3) of the February 5, 2007 Order is vacated.

_____        _____
DATE                                                         ROYCE C. LAMBERTH, Judge

COPIES:

Creighton R. Magid, Esquire
Dorsey & Whitney LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Stephen M. Pavsner, Esquire
Lawrence R. Holzman, Esquire
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.G.I.A., INC.,<br><br>      Plaintiff,<br><br>v.<br><br>MEDEX ASSISTANCE CORPORATION,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 07-CV-105-RCL<br>)<br>)<br>)<br>) |

## ORDER STAYING TRANSFER OF TELEPHONE LINES

Upon consideration of Plaintiff's Motion to Stay Paragraph 8(3) of the Court's February 5, 2007 Order, the opposition and reply thereto, and the record herein, and the oral arguments of counsel, it is this _____ day of February, 2007, for the reasons stated on the record in open court this date, hereby found that:

1. Medex would likely succeed in its appeal of Paragraph 8(3) of the February 5, 2007 Order;

2. Medex would suffer irreparable harm if the Paragraph 8(3) were not stayed pending arbitration;

3. AGIA would not be harmed by a stay of Paragraph 8(3); and

4. The public interest is not harmed by staying Paragraph 8(3).

**IT IS HEREBY ORDERED** that, pending further order of this Court or of a panel of duly appointed arbitrators, Paragraph 8(3) of the February 5, 2007 Order is hereby stayed

CIVIL ACTION NO. 07-CV-105-RCL

pending resolution of any appeal by Medex. Medex shall promptly notify the Court of any decision not to appeal the February 5 Order.

_____
ROYCE C. LAMBERTH, Judge

COPIES:

Creighton R. Magid, Esquire
Dorsey & Whitney LLP
1050 Connecticut Avenue, N.W., Suite 1250
Washington, D.C. 20036

Stephen M. Pavsner, Esquire
Lawrence R. Holzman, Esquire
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770