## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

A.G.I.A, Inc.,                                    :

      Plaintiff,                           :

vs.                                               :     CA No.:  07-CV-105 RCL

MEDEX ASSISTANCE CORPORATION,      :

      Defendant.                          :

_____

### PLAINTIFF'S CONSOLIDATED MOTION FOR AN ORDER TO SHOW CAUSE AS TO CONTEMPT AND TO ENFORCE PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW

Now comes AGIA, Inc. ("Plaintiff") by and through counsel, Lawrence R. Holzman and

Steven M. Pavsner and Joseph, Greenwald & Laake, P.A. and files this motion to hold defendant

Medex Assistance Corporation ("Defendant") in contempt for violating the preliminary injunction

issued by this Court on February 5, 2007, and to enforce the preliminary injunction. As grounds

therefore, Plaintiff respectfully represents the following to the Court.

### I. *INTRODUCTION*

On January 16, 2007, Plaintiff filed the instant action for injunctive relief arising out of

Defendant's breach of confidentiality and non-solicitation clauses in the parties' agreement and

willful and unlawful use of trade secrets.  Shortly thereafter, Plaintiffs filed a motion for preliminary

injunction which was heard by the Court on February 5, 2007.  That same day, this Court entered an

order (the "Order") enjoining the Defendant from, *inter alia*, using Plaintiff's trade secrets or

soliciting Plaintiff's customers and directing  Defendant to transfer control of four dedicated  toll-

free customer service telephone numbers to the Plaintiff.  *See* Exh. A (Order Granting Preliminary

Injunction").  Pursuant to the Order, the Plaintiff filed an undertaking as self-surety in the record of

this matter.  To date, Defendant has failed to transfer the dedicated telephone numbers as required by

the preliminary injunction.  Plaintiffs now seek an order from this Court requiring Defendant to

show cause why it should not be held in contempt of court and ordering such other and further relief

as this Court deems necessary in order to force Defendant to comply with the terms of the Order.

## II. *UNDERLYING FACTS*

1.      Plaintiffs filed the complaint and a Motion for Preliminary Injunctive Relief on

January 25, 2007.

2.      Plaintiff AGIA is an insurance broker and administrator.  It developed an emergency

assistance program for travelers known as Emergency Assistance Plus ("EA+") which it markets

through affinity groups which are membership organizations such as the Good Sam Club.  Since

inception AGIA has spent over $10 million marketing EA+ to over 7.4 million affinity group

members resulting in 92,754 active subscribers as of December 31, 2006 ("Eligible Members").

3.      AGIA entered into a written Service Agreement with defendant MEDEX dated

January 1, 2002, pursuant to which MEDEX provided Eligible Members with 24 hour phone service

and emergency support.  AGIA provided MEDEX with Eligible Members' names, addresses and

other basic information so that it could confirm caller's status and calculate its fee. ("Eligible

Member Data.")  The Service Agreement includes a confidentiality clause and non-solicitation

clause.  Defendants made a hair splitting argument with respect to the application of these clauses in

their opposition to Plaintiff's motion for preliminary injunction.  The court rejected that argument

and granted the preliminary injunction.

4.      Upon enrollment, Eligible Members receive a membership card with a toll free phone

number for calls within the United States.  The larger affinity groups representing the majority of

Eligible Members have dedicated toll free numbers used exclusively for their Eligible Members.

5.      In November 2006, AGIA gave MEDEX notice that it would terminate the Service Agreement, according to its terms, effective January 1, 2007.  AGIA requested return of the Eligible Member Data, acknowledgement of the non-solicitation clause and transfer of the dedicated toll free numbers so that the Eligible Members would not be put at risk. MEDEX's response was to refuse to return the Data and claim a right to solicit Eligible Members.  With respect to the dedicated toll free phone numbers MEDEX refused to transfer them or arrange for an automatic rollover to AGIA's new service provider On Call.  MEDEX also threatened to shut down the phone numbers and quit taking calls.  Eventually, MEDEX agreed to put a recording on the dedicated numbers referring callers to On Call.

6.      AGIA promptly mailed new membership cards with new toll free numbers for On Call to all Eligible Members.  However, AGIA's experience is that it takes a considerable amount of time before all the Members will be aware of a change.  Many Eligible Members will continue to call the old dedicated toll free numbers for some time to come.  For this reason it is imperative that those numbers remain available to Eligible Members.  When AGIA discovered that the MEDEX' recording which Eligible Members heard when they called the dedicated numbers included a solicitation it moved for a TRO and Preliminary Injunction.

7.      The forgoing facts are set forth in detail in the declarations and exhibits filed in support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction which are incorporated herein by reference.

8.      At the hearing on February 5, 2007, the primary topic was the transfer of what by then were identified as four dedicated toll free numbers.  Judge Lamberth's ruling from the bench made specific findings regarding the necessity of ordering the transfer of these lines to AGIA including a finding that AGIA had met the heightened burden of proof necessary to justify a

mandatory injunction.[1]

9.      Since the issuance of the Order, Defendant has brazenly failed to transfer the telephone lines to the Plaintiff.

10.     Instead, the Defendant has stated that it agrees "… as a display of good will, not to immediately redeploy the four telephone lines at issue, and, through mid-February, to inform Eligible Members who called the numbers of the new EA+ telephone numbers for On Call." *See* Defendant's Motion for Partial Reconsideration and Vacation of the February 5, 2007 Order and Related Stay at page 3.

11.     This "offer" is completely disingenuous and is simply an attempt to try to create out of whole cloth some type of rationale for excusing the Defendant's misbehavior.  What it clearly means is that the Defendant has "offered" to simply continue its failure to obey the order by keeping the telephone lines in its own name until mid-February.  After that, Defendant apparently reserves the right to continue failing to obey the Order by "redeploying" (i.e. using for its own benefit) the lines indefinitely.  Presumably redeployment means either Eligible Member calls will be dropped or they will be answered by a MEDEX operator who can then use the opportunity to solicit.  By amazing coincidence the one phone number MEDEX has already committed to redeploy is for AGIA's single biggest affinity group. There is nothing reasonable in this "offer".  It is contumacious in its own right.

12.     The obvious intention of the Defendant is to stall and delay compliance with the Order in an attempt to both inflict losses on the Plaintiff, and to continue its unlawful actions to the detriment of the Plaintiff.

---

[1] The undersigned contacted the office of the court reporter on Friday, February 10, 2007, in order to follow-up on a request for the transcript, and was advised that Judge Lamberth will be out of town until the first week of March, and that his court reporter would not be available during this week.

13.     As a part of its delay strategy, the Defendant has filed a Motion for Partial Reconsideration and Vacation of the February 5, 2007 Order and Related Stay. However, the Defendant did not file a motion to shorten the time for response to that motion, nor did it request expedited consideration thereof.  Thus, Defendant seeks to delay by *fiat* the effectiveness of the court's order by at least approximately 3 weeks, which is the length of time that will elapse during the briefing of the Motion to Reconsider, and more when the court takes time to consider the papers, and still more if the court elects to have a hearing.  During that time, the Defendant apparently intends to simply ignore the court's order, while causing further substantial and irreparable harm to the Plaintiff and its Eligible Members.

14.     In its Motion for Reconsideration, Defendant requests a stay pursuant to Rule 62 but has failed to offer any security as required by that rule. Given the existential threat to AGIA's business posed by Defendant's conduct, the security would need to be in the millions of dollars. Defendant knows its motion will never be granted and has simply filed it to gain more time for itself with the telephone lines that it wishes it could keep in order to steal from the Plaintiff.  Defendant could have but did not ask for a stay at the hearing. Instead, Defendant has issued its own stay by simply not complying.

15.     Notably, as Mr. Pels explains,[2] it is easy to transfer these numbers back and forth. So, if Defendant had simply transferred the numbers pending in compliance with the Order, its rights would not have been comprised.  If judge Lambreth ultimately were to amend his order in favor of Defendant, the lines could be returned.   In the meantime, Defendant has no legitimate immediate need for the numbers.  It is undisputed that the only caller are EA+ Members and the only party who is losing by non-compliance with the Order is the Plaintiff, which has already spent a lot of money enforcing its rights, and now is expending substantial additional resources enforcing the  Order.

---

[2] *See* Declaration of Gregory W. Pels.

16.     By comparison, what is most telling about Defendant's Motion is that even as it is supported by Mr. Mair's third declaration, it still does not explain what damage the Defendant would suffer if it simply complied with the Order.  As a practical matter of course, this is a "red herring".  The time for considering Defendant's pain even if it existed is past in any event.  The Court has already ruled on the Preliminary Injunction and a part of that evaluation necessarily included a weighing of the cost and prejudice to each of the parties that would be caused by a grant of the Preliminary Injunction.  Since those issues have already been resolved, such questions are not material or relevant to this motion for contempt.

17.     The only justification Defendant offers in its motion for reconsideration is the one it already unsuccessfully argued on the motion for preliminary injunction; that the Defendant "owns the right to use the four telephone numbers in issue."  This is inaccurate and irrelevant from a legal and practical standpoint; but what is most frustrating about this situation is as follows:  the four phone numbers at issue have only been used, and are only now by Plaintiff's EA+ members.  Plaintiff's contract with Defendant expired December 31, 2006.  So, Defendant simply no longer needs those numbers for any reason except to continue its exploitation of the Plaintiff's trade secrets, and to otherwise harm the Plaintiff.

18.     Moreover, to the extent that Defendant wants to "redeploy" the numbers it could simply obtain new toll free numbers.  As explained in the declaration of Gregory W. Pels submitted herewith the process to obtain a new toll free number is simple, quick and virtually without cost.  In fact Plaintiff has offered to simply swap Defendant four unused toll free numbers to replace the dedicated numbers.  If Defendant needs toll free lines for other purposes it could have gotten them by now.  *See* the Declaration of Ian M. Guthrie Esquire and Exhibit E.

19.    On the other hand, Plaintiff cannot simply cure the problem that has been created by Defendant by simply using its own new toll-free numbers for these customers.  The reason is that Plaintiff's customers are still calling on the four dedicated numbers.  That was perhaps the most central point of debate at hearing on the Preliminary Injunction and the base rationale for the Order.

20.    The clear pattern of the Defendant's conduct indicates that the Defendant wants to ignore the Order as long as it can and in so doing continue to exploit the trade secrets and harm the interest of the Plaintiff.  It is telling that the defendant did not seek an order shortening time for its own currently pending motion.

21.    In blatant disregard for this Court's authority and its Preliminary Injunction, Defendant simply chooses to ignore the Order without excuse.

22.    The Plaintiff has contacted opposing counsel of record to confer in a good faith effort to resolve the issues that are raised by this motion.  Those efforts were not successful. See the Declaration of Ian M. Guthrie, Esquire and Exhibits E-G.

### III. *ARGUMENT*

23.    The law compels this Court to find Defendant and all of its officers, agents, servants, and employees including David L. Mair Director of Client relations for Defendant and the person most involved in this matter in contempt for violating the Preliminary Injunction and to determine an appropriate sanction that will ensure compliance with the Preliminary Injunction.

### A.    The Defendant Must Comply with the Preliminary Injunction

24.    In *GTE Sylvania, Inc. v. Consumers Union of the U.S.*, Inc., 445 U.S. 375,386, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980), the Supreme Court recognized:"…the established doctrine that **persons subject to injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed...**".  *Id*. at 445 U.S. at 386, 100 S.Ct. 1194 at 1201.

(citations omitted) (emphasis added).  This Court also has the inherent power to sanction Defendant

for its conduct.  "A court of the United States shall have power to punish by **fine or imprisonment,**

at its discretion, such contempt of its authority, and none other, as... disobedience or resistance to its

lawful writ, process, order, rule, decree, or command."  18 U.S.C. § 401 (2002) (emphasis added).

22.     Defendant's filing of a Motion to Reconsider, or even an appeal does not alter its

unequivocal obligation to comply with the Preliminary Injunction. The Supreme Court of the United

States has clearly stated that a party subject to an injunction is expected to obey that injunction until

it is modified or reversed **"even if they have proper grounds to object to that order."** _GTE_

_Sylvania Inc.,_ 445 U.S. at 386, 100 S.Ct. at 1201, 63 L.Ed.2d 467 (emphasis added); _see also_

_Metropolitan Opera Ass'n, Inc. v. Hotel Employees and Rest. Employees Intern. Union_, 239 F.3d

172, 176 (2d. Cir. 2001) (even unconstitutionality of injunction is **_not_** a defense to disobedience).

23.     An enjoined party, then, "acts (or fails to act) at its peril if it declines to comply while

waiting for decision on a stay application."  _Tekkno Laboratories, lnc. v. Perales_, 933 F.2d 1093,

1099 (2d Cir. 1991).  Defendant's filing of a notice of appeal (if it elects to do so) and the Motion to

Stay, is therefore no excuse for willfully violating this Court's Preliminary Injunction.  A review of

Defendant's motion makes it clear there is no patent error, new law or new facts which would justify

reconsideration.

24.     Defendant's obligation in this case, simply is not open for debate.

25.     It is well-recognized that the test for whether contempt will lay is a simple two-part

test.   For contempt to issue, two conditions must be present:  "(1) the existence of a reasonably

clear and specific order …and (2) violation of that order by the defendant."  _See Landmark Legal_

_Foundation v. E.P.A.,_ 272 F.Supp.2d 70, 75 (D.D.C. 2004) (_citing Cobell v. Babbitt_, 37 F.Supp.2d 6,

9 (D.D.C.1999) (Lamberth, J.))(generally describing the test and citing list of cases).  _See also_, Fed.

R. Civ. P. 65(d).

26.    The order in this matter is straightforward, very specific and very particular. Defendant has been specifically and particularly directed, *inter alia,* to transfer four clearly identified telephone numbers to the Plaintiff.  *See* Exh. A (Order).

27.    The second part of the test is easy.  Defendant simply has not transferred the telephone lines.

28.    At this point in the analysis, the Plaintiff has made a prima facie case for contempt. Defendant is willfully violating this Court's Preliminary Injunction and simply refuses to comply with its obligations.

29.    Neither the Defendant's "offers" as described above, nor its filing of subsequent papers in court will satisfy any recognized test for compliance in order to avoid contempt.

30.     Even putting forth a good faith effort will not avoid contempt if it is unaccompanied by substantial compliance. A "Good faith" defense would mean that the party undertook "all reasonable steps within [its] power to comply with the court's order."  *Id. at 78.*  This Defendant has made *no* effort to comply. Rather it has made very effort to *not* comply.

31.    This Court should enforce its Preliminary Injunction and sanction Defendant appropriately for its willful and blatant disregard of the Preliminary Injunction.

**B.      Defendant Should Be Sanctioned and the Court Should Order and Direct the Telephone Company To Transfer Telephone Lines Without the Defendant's Consent**

32.    The Court has a number of options in determining an appropriate sanction.  Among the options available to the Court are: a coercive daily fine, a compensatory fine, an award of attorneys' fees and expenses to Plaintiffs and coercive incarceration.  See *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991).  In determining an appropriate sanction to secure compliance, the Court should consider the "character and magnitude of the harm

threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers*, 330 U.S. 258,304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). The sanction must be sufficient to coerce the contemnor to comply with the Preliminary Injunction. *Citronelle-Mobile* Gathering, Inc., 943 F.2d at 1304 (citations omitted).

33.    Because the terms of the Preliminary Injunction are clear, specific, and reasonable and defendant's refusal, under the circumstances, is egregious, sanctions are appropriate. This is particularly true because Defendant's actions are jeopardizing tens of thousands of EA+ members and hundreds of thousands of Good Sam members enrolled in a related program know as ERS all or which use the numbers in issue. Here, an award to Plaintiffs of a compensatory fine, coercive daily fine, and attorneys' fees and expenses are, at a minimum, warranted.

34.    Plaintiffs, request that this Court sanction Defendant by: (1) imposing a compensatory fine in the amount of $2,000 a day from the date of Plaintiffs' posting of the bond through the date of the Court's contempt order; (2) imposing a continuing $5,000 a day coercive daily fine for each day after the date of the Court's contempt order until such time as the Defendant satisfactorily complies with the Order; (3) payment of all of Plaintiffs' attorneys' fees and costs associated with the enforcement of this Court's order; (4) requiring Defendant to immediately comply with the terms of the Preliminary Injunction and the Court's contempt order under penalty of coercive incarceration of its officers and/or directors; and (5) entering an order directing the telephone provider servicing the toll-free numbers identified in the Order to transfer the ownership and control of the numbers to the Plaintiff without the Defendant's consent.

### C.    Expedited Consideration is Appropriate

35.    Due process requires the Court to provide Defendant an opportunity to "explain why the court should not make a contempt finding." *Citronelle-Mobile Gathering, Inc.*, 943 F.2d at 1304.  Having said that, Plaintiffs request that this Court set a show cause hearing in this regard on an expedited basis so as to protect the Plaintiff's interest while still providing Defendant the opportunity to explain why they are flagrantly and willfully ignoring this Court's authority.

### IV. *CONCLUSION*

This Court expressly directed the Defendant to transfer control of four specific dedicated toll-free telephone numbers.  The law requires the Defendant to comply with this Court's order.  Defendant is blatantly violating this Court's authority.  This Court should find the Defendant in contempt and impose appropriate sanctions to force compliance.

### V. *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter an order to Show Cause why the Defendant  should not be held in contempt of this court, and upon a failure of the Defendant to show cause, that the Court enter an Order to:

1.    Impose a $2,000/day compensatory fine from the date of Plaintiffs' posting of the bond through the date of the Court's contempt order; and

2.    Impose a continuing $5,000 a day coercive daily fine for each day after the date of the Court's contempt order until such time as the Defendant satisfactorily complies with the Order Granting Motion for Preliminary Injunction; and

3.    Direct the Defendant to pay all of Plaintiffs' attorneys' fees and costs associated with the enforcement of this Court's order pursuant to the filing of a bill of costs and proposed order; and

4.    Require Defendant to immediately comply with the terms of the Preliminary

Injunction and the Court's contempt order under penalty of coercive incarceration of its officers and/or directors including David L. Mair; and

5.     Specifically direct the telephone provider servicing the toll-free numbers identified in the Order to transfer the ownership and control of the numbers to the Plaintiff without the Defendant's consent. Plaintiff request the judge sign the AT&T Transfer of Service Request on behalf of Defendant MEDEX to assure that the numbers are transferred without further delay; and

6.     Grant all other relief that this Court deems appropriate.

Respectfully submitted,

JOSEPH, GREENWALD, & LAAKE, P.A.


_____ */s/ filed via ECF* _____
Stephen M. Pavsner (Bar No. DC912220)
Lawrence R. Holzman (Bar No. DC466472)
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301)220-2200
(301)220-1214 (fax)
spavsner@jgllaw.com
lholzman@jgllaw.com
*Co-Counsel for Plaintiff*

SCHLEY LOOK & GUTHRIE LLP

Ian M. Guthrie, Esquire, *pro hac vice*
311 E Carrillo Street, Suite D
Santa Barbara, CA 93101-7475
*Co-Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of February, 2007, a copy of the foregoing Plaintiff's Consolidated Motion for an Order to Show Cause as to Contempt and to Enforce Preliminary Injunction and Supporting Memorandum of Law was served via ECF on:

Creighton  R. Magid, Esquire
Dorsey & Whitney, LLP
Washington Square
1050 Connecticut Avenue, NW, Suite 1250
Washington, DC  20036


                    */s/ filed via ECF*_____
                    Lawrence R. Holzman

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
A.G.I.A., Inc.,                            )
                                           )
      Plaintiff,                     )
                                           )
    v.                                 )      Civil Action No. 07-105 (RCL)
                                           )
MEDEX ASSISTANCE CORP.,                    )
                                           )
      Defendant.                     )
_____)

## ORDER

Upon consideration of Plaintiff's Motion [5] for a Preliminary Injunction, the opposition and reply thereto, and the record herein, and the oral arguments of counsel, it is, for the reasons stated on the record in open court this date, hereby found that:

1.    Pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. § 3 and *Performance Unlimited v. Questar Publishes Inc.,* 52 F.2d 1373, 1380 (6th Cir. 1995) AGIA has the right to seek interim injunctive relief from this Court pending an arbitration hearing before a panel of duly appointed arbitrators;

2.    AGIA Eligible Member Data consisting of the names, addresses and certain other basic information of AGIA's Eligible Members' is being misappropriated by Medex Assistance Corp. ("Medex") and MEDEX is soliciting AGIA's Eligible;

3.    Plaintiff will suffer irreparable harm and loss if Medex is permitted to convert Plaintiff's property to Medex's use and benefit and is permitted to solicit AGIA's customers;

4.     AGIA has a statutory right to injunctive relief pursuant to The Maryland Uniform Trade Secrets Act, *Md. Code Ann. Com. Law II §11-1202;*

5.     AGIA has no adequate remedy at law;

6.     Greater injury will be inflicted upon AGIA by denial of temporary injunctive relief than would be inflicted upon Medex by the granting of such relief; and

7.     The issuance of injunctive relief will serve the public interest, *inter alia*, further preserve the Eligible Members access to emergency help and preserve their privacy.

8.     **IT IS HEREBY ORDERED** that, pending further order of this Court or of a panel of duly appointed arbitrators**:**

> (1)    Medex is enjoined, directly or indirectly, with their agents, employees and representatives, from (a) using or disclosing in any way any of the Documents related to the EA+ program and/or EA+ eligible persons to solicit EA+ eligible customers, and (b) using in any way or furnishing to any third-party any of the Documents and other information contained in the Documents at any time, or any copies and/or extracts thereof;
>
> (2)    Using, disclosing, or transmitting EA+ Eligible Member Data for any purpose, other than providing services under the Service Agreement;
>
> (3)    Medex shall immediately make appropriate arrangements to transfer all the EA+ dedicated toll free phone numbers currently in

its control to AGIA or its designee.  The phone numbers are:

     (i)     (877) 773-3432

     (ii)    (800) 698-5688

     (iii)   (877) 565-2542

     (iv)   (800) 586-0193

9.    **IT IS FURTHER ORDERED** that Plaintiff shall post a bond of $25,000.00 with the Court on or before February 7, 2007, and shall be allowed to act as its own surety for such bond.

10.   **IT IS FURTHER ORDERED** that the motion for temporary restraining order is now MOOT.


SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, February 5, 2007.

**Ian Guthrie**

| | |
|---|---|
| **From:** | Mike Schley |
| **Sent:** | Tuesday, February 06, 2007 11:13 AM |
| **To:** | 'ralph.matthew@dorsey.com' |
| **Cc:** | 'Andrew Dowen'; 'Dave McCarty' |
| **Subject:** | Transfer of four dedicated toll-free lines |

Matt:

I received your calls this morning, and understand that David Mair is working on an immediate transfer of the four dedicated toll-free numbers to AGIA.

Please ask Mr. Mair to call Andy Dowen, CFO at AGIA. I am sure AT&T (which you identified as the provider) will need to communicate with the AGIA, as the transferee of the phone numbers, to make this process go smoothly. It is important that MEDEX not take any unilateral action with AT&T that might cause even a temporary disruption in service to the Eligible Members, so it will be important for Mr. Mair and Mr. Dowen to be in full communication and agreement about the details of the transfer.

Mr. Dowen's contact information is:
email: ADowen@agia.com
office: 805-566-9191 x. 1244
cell: 805-705-4592

Given that Mr. Mair is traveling, please also provide Mr. Mair's cell phone number to us, by reply email, so that Mr. Dowen can reach him about some questions that have come up.

I will appreciate your assistance in this matter.

Mike

**Michael D. Schley**
**Schley Look & Guthrie LLP**
311 E. Carrillo Street, Santa Barbara CA 93101
T: 805-966-2940  F: 888-453-1535
E: Mike@SLGlegal.com
Web: www.slglegal.com

"The good lawyer is not the one who has an eye to every side and angle of contingency, and qualifies all his qualifications, but who throws himself on your part so heartily, that he can get you out of a scrape." -- Ralph Waldo Emerson

THIS COMMUNICATION IS CONFIDENTIAL, AND MAY INCLUDE PRIVILEGED INFORMATION.

*Ex. 20*

2/12/2007

| | |
|---|---|
| **From:** | <u>Mike Schley</u> |
| **To:** | <u>"Ralph, Matthew"; Mike Schley;</u> |
| **CC:** | <u>"Andrew Dowen"; "Dave McCarty"; "Magid, Chip"; "Stoeri,</u> <u>Bill"; "Mair, David L. (E-mail)";</u> |
| **Subject:** | RE: Transfer of four dedicated toll-free lines |
| **Date:** | Tuesday, February 06, 2007 2:49:23 PM |
| **Attachments:** | |

Matt:

Andrew Dowen at AGIA will be calling David Mair on his cell phone to procure a signature on the Responsible Organization Form used to effect the transfer.

If you believe someone other than David Mair should be signing in Mr. Mair's absence, please let us know.

PACER will confirm that we filed the bond a few minutes ago.

Mike

**Michael D. Schley**
**Schley Look & Guthrie LLP**
311 E. Carrillo Street, Santa Barbara CA 93101
T: 805-966-2940  F: 888-453-1535
E: Mike@SLGlegal.com
Web: www.slglegal.com

"The good lawyer is not the one who has an eye to every side and angle of contingency, and qualifies all his qualifications, but who throws himself on your part so heartily, that he can get you out of a scrape." -- Ralph Waldo Emerson

THIS COMMUNICATION IS CONFIDENTIAL, AND MAY INCLUDE

*Ex. Z1*

PRIVILEGED INFORMATION.

_____

**From:** Ralph, Matthew [mailto:Ralph.Matthew@dorsey.com]
**Sent:** Tuesday, February 06, 2007 2:31 PM
**To:** Mike Schley
**Cc:** Andrew Dowen; Dave McCarty; Magid, Chip; Stoeri, Bill; Mair, David L. (E-mail)
**Subject:** RE: Transfer of four dedicated toll-free lines
**Importance:** High

Mike,

David has worked with a MEDEX employee to ascertain the procedure for transferring the phone lines. Evidently AGIA must initiate the process with its own long-distance carrier. AGIA's long distance carrier will then contact AT&T (MEDEX's carrier) to request transfer of those numbers. AT&T will then ask MEDEX for authorization to release the numbers. Therefore, the ball is in AGIA's court with respect to initiating the transfer. If you learn that the process is other than I have described, please contact me right away.

Since the value of the telephone lines may be an issue for arbitration, I want to advise you that MEDEX has already incurred costs related to redeployment of at least one of the lines. MEDEX would be seeking those costs at arbitration.

David's cell phone is (443) 414-8424. He will be traveling the remainder of the week at least.

What is the status of AGIA's bond?

Matt

F. Matthew Ralph
Dorsey & Whitney LLP
50 South Sixth Street
Minneapolis, MN 55402
Telephone: 612.492.6964
Fax: 612.340.8800

CONFIDENTIAL COMMUNICATION: E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

-----Original Message-----
**From:** Mike Schley [mailto:Mike@slglegal.com]
**Sent:** Tuesday, February 06, 2007 1:13 PM
**To:** Ralph, Matthew
**Cc:** Andrew Dowen; Dave McCarty
**Subject:** Transfer of four dedicated toll-free lines

Matt:

I received your calls this morning, and understand that David Mair is working on an immediate transfer of the four dedicated toll-free numbers to AGIA.

Please ask Mr. Mair to call Andy Dowen, CFO at AGIA. I am sure AT&T (which you identified as the provider) will need to communicate with the AGIA, as the transferee of the phone numbers, to make this process go smoothly. It is important that MEDEX not take any unilateral action with AT&T that might cause even a temporary disruption in service to the Eligible Members, so it will be important for Mr. Mair and Mr. Dowen to be in full communication and agreement about the details of the transfer.

Mr. Dowen's contact information is:
email: ADowen@agia.com
office: 805-566-9191 x. 1244
cell: 805-705-4592

Given that Mr. Mair is traveling, please also provide Mr. Mair's cell phone number to us, by reply email, so that Mr. Dowen can reach

him about some questions that have come up.

I will appreciate your assistance in this matter.

Mike

**Michael D. Schley**
**Schley Look & Guthrie LLP**
311 E. Carrillo Street, Santa Barbara CA 93101
T: 805-966-2940  F: 888-453-1535
E: Mike@SLGlegal.com
Web:  www.slglegal.com

"The good lawyer is not the one who has an eye to every side and
angle of contingency, and qualifies all his qualifications, but who
throws himself on your part so heartily, that he can get you out of a
scrape." -- Ralph Waldo Emerson

THIS COMMUNICATION IS CONFIDENTIAL, AND MAY INCLUDE
PRIVILEGED INFORMATION.

# Ian Guthrie

| | |
|---|---|
| **From:** | Ian Guthrie |
| **Sent:** | Wednesday, February 07, 2007 2:45 PM |
| **To:** | 'Ralph, Matthew' |
| **Cc:** | Mike Schley; 'Andrew Dowen'; 'dghelli@oncallinternational.com' |
| **Subject:** | AGIA v MEDEX transfer of lines |

**Attachments:** Ph line transfer.doc

Matt,

Attached is a Transfer of Service Agreement. Please have any authorized representative of MEDEX complete and sign the Current Customer portion of the form. Then email a PDF and express mail the ink signed form to:

Don Ghelli
On Call international
One Delaware Drive
Salem, New Hampshire 03079
dghelli@oncallinternational.com

Mr. Ghelli will take it from there.

Please cc the transmittal and copy of the Transfer via email to Andrew Dowen of AGIA and me. We expect this to be completed first thing tomorrow morning.

 ATT advise it may take 5 days to complete the transfer so please do not discontinue service on these lines until confirmation of the transfer.

*Ian M. Guthrie*
**Schley Look & Guthrie LLP**
311 E. Carrillo Street, Suite D
Santa Barbara, CA 93101-1400
T: 805.966.2985
F: 805.966.2280
ian@slglegal.com
web: slglegal.com


The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

*Ex. 22*

## TRANSFER OF SERVICE AGREEMENT

**Current Customer: MEDEX ASSISTANCE CORP.**

(Full Legal Name)

**New Customer: ON CALL INTERNATIONAL**

(Full Legal Name)

| **AT&T Service(s) to be transferred (referred to in this Agreement as the "Identified Service"):** |
|---|
| 800-586-0193, 800-698-5688,, 877-565-2542, 877-773-3432 |
| |

(Specify Master Customer Number (MCN) or billed telephone numbers (BTNs) for outbound services, Plan ID number (PLID) or account telephone numbers (ATNs) for inbound services, Plan ID number or circuit numbers for private line and/or local channel services, and Contract Tariff number for Contract Tariff. Attach additional pages if necessary.)

1.  Current Customer is AT&T's existing customer of record for the Identified Service. Current Customer hereby requests that AT&T transfer the Identified Service to New Customer. **Current Customer understands that it will no longer be AT&T's customer for the Identified Service after the Effective Date of the transfer.**

2.  New Customer agrees to assume all obligations of Current Customer as of the Effective Date of the transfer. These obligations include, for example: all outstanding indebtedness for the Identified Service, the unexpired portion of any applicable minimum payment periods, the unexpired portion of any term of service and usage and/or revenue commitments, and any applicable shortfall or termination liabilities. This transfer of service does not relieve or discharge Current Customer from remaining jointly and severally liable with New Customer for any obligations existing as of the Effective Date of the transfer, except as provided in the applicable tariff provisions.

3.  The Effective Date of the transfer will be the earlier of: (a) date on which AT&T accepts the transfer in writing; or (b) the fifteenth day after AT&T receives a fully executed original of this Transfer of Service form, unless, within such fifteen-day period, AT&T rejects the transfer or assignment or requests a deposit in connection with the transfer or assignment. Pursuant to applicable tariffs, AT&T may not unreasonably reject a transfer or assignment of service.

4.  The service is not to be interrupted at the time the transfer is made. Nothing herein shall give New Customer or Current Customer any proprietary interest in any 800 telephone number associated with the Identified Service.

5.  This transfer is governed by the terms of the applicable AT&T Service Guide. In the event of any inconsistency between the applicable Service Guide provisions and this Agreement, the terms of the Service Guide shall prevail.

Accepted by AT&T: _____          _____

(Signature & Title)                                    (Date)

©1995-1996 AT&T Corp.                    ATT536   Current Customer: MEDEX ASSISTANCE CORP

## TRANSFER OF SERVICE AGREEMENT

| CURRENT CUSTOMER: | NEW CUSTOMER: |
|---|---|
| Signature of Authorized Representative | Signature of Authorized Representative |
| Type or Printed Name | Typed or Printed Name |
| Title: | Title: |
| Date: | Date: |

Accepted by AT&T: _____    _____

          (Signature & Title)                 (Date)



**SCHLEY LOOK & GUTHRIE** LLP

A  T  T  O  R  N  E  Y  S    A  T    L  A  W

Santa Barbara Office:
311 East Carrillo Street, Suite D
Santa Barbara, CA 93101
Direct Dial: (805) 966-2985
Facsimile: (805) 966-2280
E-mail: Ian@slglegal.com

February 9, 2007

**_VIA EMAIL & FIRST CLASS MAIL_**

Creighton R. Magid, Esq.
Dorsey & Whitney, LLP
Washington Square
1050 Connecticut Ave. NW, Suite 1250
Washington, D.C. 20036

  **_Re: AGIA V. MEDEX/ Contempt._**

Dear Mr. Magid:

On February 5, 2007, the court ordered MEDEX to immediately transfer the four dedicated toll free phone numbers. The court did not and has not granted a stay. We have received your motion for reconsideration and for stay and find it lacking in merit and mere re-argument. We have yet to receive Mr. Mair's latest declaration. MEDEX is in contempt of the Judges order and we will move forward with contempt proceedings unless MEDEX immediately delivers the Transfer of Service Agreement previously requested.

We note with concern the statement at the top of page 3 of your memorandum that MEDEX will be redeploying the numbers in mid-February. This is the first I or my client have heard of such a thing. Please immediately advise us of what MEDEX's intentions are with respect to the four numbers. Which if any of the four numbers will be redeployed? When will those numbers be redeployed? What will be the impact on AGIA customers who call in on those numbers after redeployment?

As MEDEX's telecommunications people or its long distance carrier can confirm, it is quick easy and cheap to obtain new toll free numbers. MEDEX could have obtained replacement numbers in less time and at less expense than it has spent in filing its motion for reconsideration. There is simply no legitimate basis for MEDEX holding onto these numbers. AGIA has the following reserve numbers that it hereby offers to transfer to MEDEX in exchange for MEDEX's transfer of the four dedicated numbers:

800-580-0802
800-580-4787

www.slglegal.com

*Solvang:* 433 Alisal Road, Suite K ▪ 93463-3717 ▪ Tel: 805.688.9226 ▪ Fax: 805.688.5774
*Santa Barbara:* 311 E. Carrillo Street ▪ 93101-1400 ▪ Tel: 805.966.4100 ▪ Fax: 805.966.2280
*Partners:* MICHAEL D. SCHLEY ▪ JOSEPH F. LOOK ▪ IAN M. GUTHRIE ▪ BRETT LOCKER

Ex. 23

*Creighton R. Magid, Esq.*
*February 9, 2007*
*Page 2 of 2*

866-803-6831
866-803-6832

Your immediate attention to this matter is required. You and your client are in contempt and are unnecessarily putting tens of thousands of people at risk for service on emergency calls.

Very truly yours,

Ian M. Guthrie

IMG: REG

Cc: Lawrence Holzman, Esq. (via email)
    Mike Schley, Esq. (via email)
    Dave McCarty (via email)
    Mathew Ralph, Esq. (via email)
    Bill Stoeri, Esq. (via email)

## Ian Guthrie

**From:** Magid, Chip [Magid.Chip@dorsey.com]

**Sent:** Sunday, February 11, 2007 7:01 PM

**To:** Ian Guthrie

**Subject:** Our Conversation Yesterday

Ian:

I write, as you requested, to follow up on our conversation yesterday.

First, you asked which of the toll-free telephone numbers had been redeployed. That number is 877-565-2542.

Second, you asked what "redeployed" meant. As I told you, it means that it has been assigned to a different client. Your client is well aware of the meaning of the term, since redeployment of the numbers has been the subject of numerous discussions between our clients since late November, 2006. In any event, the redeployment does not, as I explained to you, mean that the other client will immediately begin using the number. Rather, it means that the other client has printed cards and prepared to use the number, which will be switched to that customer a few months in the future. (My memory is that it will be in late spring, but I need to verify that.)

Third, you asked whether the four toll-free lines would "go dark" on February 15. They will not. MEDEX will continue forwarding AGIA Participating Group calls to On Call International after February 15 for a as-yet-undetermined period, but one that will, at a minimum, allow the parties an opportunity to resolve matters.

Your letter of February 9 (received well after the close of business on Friday) asserts that you "note with concern the statement at the top of page 3 of your memorandum that MEDEX will be redeploying the numbers in mid-February." The memorandum says no such thing. What it DOES say is that the only commitment made by MEDEX to AGIA with respect to forwarding calls to On Call was that MEDEX would forward the calls until mid-February. MEDEX has fully complied with that commitment. Nothing in the memorandum, or in our conversation, suggested that another user would take over the lines on February 16.

You assert that it is "quick, easy and cheap" to obtain new toll free numbers. That is not accurate for the purposes to which MEDEX puts its lines. It also ignores the fact that one of the lines has already been redeployed, with significant attendant expense.

Finally, you threaten to seek a contempt order. In light of the fact that MEDEX is continuing to forward calls to On Call, and in light of the fact that MEDEX has timely sought reconsideration and a stay, such a motion is neither warranted nor appropriate. As a means of going forward without unnecessary motions, however, MEDEX will execute the Transfer of Service Agreement tomorrow (if it has not already been executed). I proposed that you and I agree on a suitable form of escrow for the agreement, so that neither party's rights are compromised.

Please call me tomorrow to discuss how best to proceed.

Sincerely,

Chip

Ex. 24



# SCHLEY LOOK & GUTHRIE LLP
### A T T O R N E Y S   A T   L A W

Santa Barbara Office:
311 East Carrillo Street, Suite D
Santa Barbara, CA  93101
Direct Dial:  (805) 966-2985
Facsimile:  (805) 966-2280
E-mail:  Ian@slglegal.com

February 9, 2007

***VIA EMAIL & U.S. MAIL***

Creighton R. Magid, Esq.
Dorsey & Whitney, LLP
Washington Square
1050 Connecticut Ave. NW, Suite 1250
Washington, D.C. 20036

     ***Re:***     ***AGIA V. MEDEX/ Contempt.***

Dear Mr. Magid:

This is in response to your email of February 11, 2007.

Thank you for providing the information with respect to which number has been "redeployed" and what this means.

We have now received Mr. Mair's supplemental declaration. Both your email and the declaration fail to provide the court or AGIA with any specificity as to the alleged impact on MEDEX of the courts order with respect to number 877-565-2542. Given the fact that this is Mr. Mair's third declaration and your office has known since my conversation with Mr. Ralph in January, 2007 that AGIA would be seeking a TRO and preliminary injunction it can only be assumed that MEDEX has no facts and your whole redeployment/cost argument is simply a smoke screen. If there is any legitimacy to MEDEX's argument in this regard it is incumbent on MEDEX to provide the court with details including when the redeployment was committed to, where in the redeployment process MEDEX is, what cost it has already incurred and what costs will be incurred, if any, as a result of stopping the redeployment. At the hearing you made statements about the huge expenses incurred by MEDEX. In your February 11th email you speak of "significant attendant expense." The court and AGIA needs details. Why can't MEDEX simply swap numbers as proposed in my February 9th letter?

I did not threaten you with a contempt order. Throughout this process, my partner and I have tried to advise your office in detail as to what our position was and what we would do if MEDEX persisted in pursuing its illegal course of action. Since MEDEX has seen fit to ignore the court's order AGIA has no alternative but to move for contempt.

www.slglegal.com

*Solvang:* 433 Alisal Road, Suite K ▪ 93463-3717 ▪ Tel: 805.688.9226 ▪ Fax: 805.688.5774
*Santa Barbara:* 311 E. Carrillo Street ▪ 93101-1400 ▪ Tel: 805.966.4100 ▪ Fax: 805.966.2280
*Partners:* MICHAEL D. SCHLEY ▪ JOSEPH F. LOOK ▪ IAN M. GUTHRIE ▪ BRETT LOCKER

Ex. 25

*Creighton R. Magid, Esq.*
*February 12, 2007*
*Page 2 of 2*

Your proposal to escrow the lines is meaningless. What do you intend? How does that solve the problem? In light of MEDEX's prior promises to escrow or pay the unearned premiums any promise to escrow the phone numbers is hollow. In any event escrowing the phone numbers is unlikely to solve the problems leading up to AGIA filing its original motion.

I trust this is responsive to your email of February 11, 2007. If not please contact me.

Very truly yours,

Ian M. Guthrie

IMG: REG

Cc: Lawrence Holzman, Esq. (via email)
   Mike Schley, Esq. (via email)
   David McCarty (via email)
   Mathew Ralph, Esq. (via email)
   Bill Stoeri, Esq. (via email)

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

A.G.I.A., Inc.,                                  :

     Plaintiff,                              :

vs.                                              :    CA No.: 07-CV-105 RCL
MEDEX ASSISTANCE CORPORATION,       :

     Defendant.                            :

---

### DECLARATION OF IAN M. GUTHRIE

I, Ian M. Guthrie, declare:

**1.** I am a partner in the law firm of Schley Look & Guthrie, LLP, Santa Barbara, California. My firm represents A.G.I.A., Inc. ("AGIA"). I have been admitted *pro hac vice* in this action and argued the motion for preliminary injunction before the Honorable Royce C. Lamberth, United States District Judge, on February 5, 2007.

**2.** I submit this declaration in support of AGIA's Motion for Contempt and to Enforce Preliminary Injunction. I have personal knowledge of the facts herein, except where indicated.

**3.** Immediately after the hearing on February 5, 2007, I asked MEDEX' counsel Creighton Magid how best to follow up the courts order that the four dedicated toll free phone numbers be transferred. Mr. Magid suggested I communicate with Matthew Ralph of his firms Minneapolis office.

**4.** On February 6, 2007, my partner Mike Schley received a call from Mr. Ralph advising him that AGIA should work with David Mair of MEDEX with respect to the transfer. A true and correct copy of Mr. Schley's confirming email to Mr. Ralph dated February 6, 2007 is attached hereto as Exhibit 20.

**5.** I immediately forwarded Mr. Mair's contact information to AGIA.

**6.** Mr. Ralph emailed my partner on February 6, 2007 to state that MEDEX' understanding was that AGIA must initiate the transfer process through its own long distance carrier. A true and correct copy of Mr. Ralph's email is attached hereto as Exhibit 21. I have been advised by my client's telecommunication department that all it takes to transfer the toll free numbers is MEDEX' signature on an AT&T Transfer of Service Agreement.

**7.** Because AGIA had been having difficulty in reaching Mr. Mair I emailed Mr. Ralph an AT&T Transfer of Service Agreement with respect to the four phone numbers on February 7, 2007 and ask that he obtain MEDEX' signature and forwarded it on for processing. A true and correct copy is attached hereto as Exhibit 22. Despite numerous calls and emails I heard nothing further from MEDEX' attorney until we received notice of the motion for consideration.

**8.** On February 9, 2007 I sent via email and first class mail a letter to Mr. Magid advising him that AGIA would move forward with contempt proceedings unless MEDEX immediately transferred the four dedicated phone numbers. In that letter I also indicated that AGAI had four toll free numbers held in reserve and would be glad to transfer those to MEDEX in an exchange for the four dedicated numbers. A true and correct copy is attached hereto as Exhibit 23. Mr. Magid replied with an email dated February 11, 2007, to which I replied with a letter dated February 12, 2007. True and correct copies of both of those letters are attached hereto as Exhibits 24 and 25.

**9.** Despite the passage of a week and despite MEDEX' original indication that it would cooperate, the four toll free numbers have still not been transferred.

I declare under penalty of perjury that the foregoing is true and correct and was executed by me at Santa Barbara, California on February 13, 2007.

Ian M. Guthrie

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

A.G.I.A, Inc.,                                   :

      Plaintiff,                           :

vs.                                              :     CA No.:  07-CV-105 RCL

MEDEX ASSISTANCE CORPORATION,     :

      Defendant.                         :

---

### DECLARATION OF GREGORY W. PELS

I, Gregory W. Pels, declare:

    **1.**  I am the Assistant Vice President for Corporate Services of A.G.I.A., Inc. ("AGIA").  My responsibilities include procuring, provisioning, and managing toll-free numbers used to service AGIA client groups and their members.   I am currently responsible for over 200 toll-free numbers in active use by AGIA or reserved for potential use, and am intimately familiar with the telephone company practices and policies relating to administration of toll-free numbers.  I have approximately 22 years' experience managing and administering toll-free customer support telecommunications.

    **2.**  I submit this declaration in support of AGIA's Motion for Contempt and opposition to the Motions for Reconsideration and Stay filed by Defendant MEDEX Assistance Corporation ("MEDEX").  I have personal knowledge of the facts herein, except where indicated.

## MEDEX CAN EASILY REPLACE

## THE DEDICATED TOLL-FREE NUMBERS

**3.**  MEDEX is answering four toll-free numbers provided by AT&T that are called only by Eligible Members of the AGIA EA+ program.

**4.**  In order to comply with the court order, MEDEX need do no more than sign a transfer form authorizing the reassignment of the four dedicated lines to AGIA's designee, new service provider On Call International, Inc.  The transfer takes about five days to be implemented at AT&T.  Since both MEDEX and On Call International, Inc use AT&T as their long distance provider, the rerouting of the calls are staying in the same long distance network.  AGIA sent the transfer form to MEDEX on February 7, 2007. A copy of that transfer form is attached as Exhibit 26.

**5.**  It would be very easy for MEDEX to procure four new toll-free numbers to replace the four numbers that MEDEX has been ordered to transfer to AGIA.  This is especially true where, as here, the numbers being replaced have no mnemonic characteristics (such as "1-800-FLOWERS").  The process involves these steps:

    **a.**  Contacting AT&T to reserve the desired four toll-free numbers.

    **b.**  Any internal programming at MEDEX that might be necessary to ensure that the new toll-free numbers are answered by their telephone switching equipment.

**6.**  David Mair, of MEDEX, stated in his Supplemental Declaration dated February 11, 2007, at par. 5, that "MEDEX' computer programming is specifically designed around these [toll free numbers] and other numbers to transfer incoming calls into the appropriate emergency, non-emergency, primary, secondary, and dedicated customer queues."  This is misleading, to the extent it implies a significant burden would

be imposed on MEDEX when it replaces the AGIA toll-free numbers with new ones. In a business like that of MEDEX' and AGIA's, involving toll-free customer service for an ever-changing client base, this type of programming occurs nearly constantly and is a routine function.

7. In my experience, this entire process takes approximately five business days. Had MEDEX started this process on February 5, the day of the court order, they would probably have new toll-free numbers up and running by today. The telephone switch programming costs should be minimal. Depending on the service plan MEDEX has with AT&T, there might be no fees associated with setting up the new numbers; in any event, the fees would be modest.

8. AGIA usually maintains a small pool of reserved toll-free numbers pending their assignment to new client programs. I have taken four toll-free numbers from that pool and earmarked them for transfer to MEDEX, if it so desires. The numbers are:

a. 800-580-0802
b. 800-580-4787
c. 866-803-6831
d. 866-803-6832

I will hold these toll-free numbers for transfer to MEDEX, until they accept or reject AGIA's offer to transfer them in exchange for MEDEX' transfer of the four AGIA dedicated toll-free numbers. MEDEX could have these four numbers up and running within about five business days. There are no carrier charges involved in processing a transfer of this type. It is accomplished by the simple execution of a short form, the same form we have asked MEDEX to sign for transfer of AGIA's dedicated toll-free numbers. Please note that two of the numbers above are "800" numbers, which are a bit more difficult to obtain these days, and they are offered to replace the two 800 numbers being

transferred to MEDEX, in case MEDEX feels that an 866 or 877 number is not comparable.

## THE DEDICATED NUMBERS MAY EASILY BE

## "POINTED" TO AGIA

9.  I understand that AGIA's opposition papers will identify an alternative remedy, which is to require that the four dedicated toll-free numbers be "pointed" toward service numbers at AGIA's new service provider, On Call International, Inc.  This, too, would be easy to accomplish.  This involves MEDEX and On Call executing a simple order to AT&T directing that all calls coming in to one of the dedicated toll-free phone numbers be pointed, or routed, automatically to the corresponding new toll-free number at On Call.  Like the transfer process described above, this would be affected in about five business days.

10. This solution is not as desirable, for these reasons:

a.    MEDEX, as the subscriber to the toll-free numbers, would retain the power to redirect the calls, or make other changes to the routing, answering or processing of call traffic, without AGIA's knowledge.  Since MEDEX has previously placed a sales message on these lines without AGIA's knowledge or consent and continually threatened to "redeploy" these lines, we do not trust them to use their continued control of the toll-free numbers responsibly.

b.    "Pointing" results in double-charging for telephone traffic.  This is because there are charges for the calls coming in on the four dedicated toll-free lines, plus there are charges for the same calls once they have been routed to the new On Call numbers.

I declare under penalty of perjury that the foregoing is true and correct and was executed by me at Carpinteria, California on February 13, 2007.

Gregory W. Bels

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

A.G.I.A, Inc.,                                  :

      Plaintiff,                           :

vs.                                             :    CA No.:  07-CV-105 RCL

MEDEX ASSISTANCE CORPORATION,                   :

      Defendant.                           :

_____

### ORDER

Upon consideration of the Plaintiff's Consolidated Motion for An Order To Show Cause as to Contempt and to Enforce Preliminary Injunction and Supporting Memorandum of Law, the Order to Show Cause dated _____, the response if any thereto, and for good cause shown, on is this _____ day of _____, 2007,

The Court hereby finds that:

1.      The Court finds that the Defendant has failed to comply with the reasonable and specifically articulated terms of the Order of this Court Granting the Plaintiff's Motion for Preliminary Injunction;

2.      On February 5, 2007, after full briefing and a hearing on the record, this court entered an order (the "Order") granting the Plaintiff's Motion for Preliminary Injunction;

3.      The Plaintiff filed an undertaking pursuant to the Order as self-surety on February 6, 2007.

4.      The Order expressly directed the Defendant to transfer control of four dedicated toll-free customer service telephone numbers to the Plaintiff;

5.      The Court finds that the Defendant has failed and refused to obey the lawful order of this court in that it has not transferred control of the four dedicated toll-free customer service telephone numbers to the Plaintiff;

6.      The Defendant is in contempt of the Order; and

Now, therefore, it is hereby

ORDERED, that:

1.      Defendant shall immediately pay to the Plaintiff a compensatory fine in the amount of $5,000 for each day beginning February 6, 2007, through and including the date of this Order; and

2.      Defendant shall pay to Plaintiff a continuing coercive fine in the amount of $5,000 a day for each day after the date of this Order until such time as the Defendant demonstrates satisfactorily compliance with the Order Granting Motion for Preliminary Injunction; and

3.      Defendant shall pay to Plaintiffs' attorneys' fees and costs associated with the enforcement of this Court's order in an amount to be set forth upon the filing by Plaintiff's counsel of a bill of costs and proposed order granting attorneys fees; and

4.      Defendant shall immediately comply with the terms of the Preliminary Injunction and this Order under penalty of coercive incarceration of its officers and/or directors; and

5.      AT&T is specifically directed to immediately transfer the toll-free telephone numbers set forth here to the Plaintiff, AGIA, Inc. without the Defendant's consent, the said telephone numbers being:

> (i) (877) 773-3432,
> (ii) (800) 698-5688,
> (iii) (877) 565-2542, and
> (iv) (800) 586-0193.

2

In order to effect this transfer the court has signed the AT&T Transfer of Service

Agreement attached hereto as Exhibit 1 as the Current Customer on behalf of MEDEX.

_____
Judge, U.S. District Court for the
District of Columbia

## TRANSFER OF SERVICE AGREEMENT

**Current Customer: MEDEX ASSISTANCE CORP.**

(Full Legal Name)

**New Customer: ON CALL INTERNATIONAL**

(Full Legal Name)

| **AT&T Service(s) to be transferred (referred to in this Agreement as the "Identified Service"):** |
| --- |
| 800-586-0193, 800-698-5688,, 877-565-2542, 877-773-3432 |
| |

(Specify Master Customer Number (MCN) or billed telephone numbers (BTNs) for outbound services, Plan ID number (PLID) or account telephone numbers (ATNs) for inbound services, Plan ID number or circuit numbers for private line and/or local channel services, and Contract Tariff number for Contract Tariff. Attach additional pages if necessary.)

1.    Current Customer is AT&T's existing customer of record for the Identified Service. Current Customer hereby requests that AT&T transfer the Identified Service to New Customer. **Current Customer understands that it will no longer be AT&T's customer for the Identified Service after the Effective Date of the transfer.**

2.    New Customer agrees to assume all obligations of Current Customer as of the Effective Date of the transfer. These obligations include, for example:  all outstanding indebtedness for the Identified Service, the unexpired portion of any applicable minimum payment periods, the unexpired portion of any term of service and usage and/or revenue commitments, and any applicable shortfall or termination liabilities. This transfer of service does not relieve or discharge Current Customer from remaining jointly and severally liable with New Customer for any obligations existing as of the Effective Date of the transfer, except as provided in the applicable tariff provisions.

3.    The Effective Date of the transfer will be the earlier of: (a) date on which AT&T accepts the transfer in writing; or (b) the fifteenth day after AT&T receives a fully executed original of this Transfer of Service form, unless, within such fifteen-day period, AT&T rejects the transfer or assignment or requests a deposit in connection with the transfer or assignment.  Pursuant to applicable tariffs, AT&T may not unreasonably reject a transfer or assignment of service.

4.    The service is not to be interrupted at the time the transfer is made. Nothing herein shall give New Customer or Current Customer any proprietary interest in any 800 telephone number associated with the Identified Service.

5.    This transfer is governed by the terms of the applicable AT&T Service Guide.   In the event of any inconsistency between the applicable Service Guide provisions and this Agreement, the terms of the Service Guide shall prevail.

Accepted by AT&T: _____       _____

(Signature & Title)                                                          (Date)

©1995-1996 AT&T Corp.                         ATT536   Current Customer: MEDEX ASSISTANCE CORP

## TRANSFER OF SERVICE AGREEMENT

| CURRENT CUSTOMER: | NEW CUSTOMER: |
|---|---|
| Signature of Authorized Representative | Signature of Authorized Representative |
| Type or Printed Name | Typed or Printed Name |
| Title: | Title: |
| Date: | Date: |

Accepted by AT&T: _____    _____

(Signature & Title)    (Date)

©1995-1996 AT&T Corp.

ATT536    Current Customer: MEDEX ASSISTANCE CORP

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

A.G.I.A, Inc.,                                    :

      Plaintiff,                              :

vs.                                               :     CA No.:  07-CV-105 RCL

MEDEX ASSISTANCE CORPORATION,                     :

      Defendant.                             :

_____

### SHOW CAUSE ORDER

      Upon consideration of the Plaintiff's Consolidated Motion for an Order to Show Cause as to Contempt and to Enforce Preliminary Injunction and Supporting Memorandum of Law, and for good cause shown, it is this _____ day of _____, 2007, hereby

      ORDERED, that the Defendant shall file a written response hereto on or before February 16, 2007, and appear before this court on _____, at _____ a.m./p.m., to show cause if any may be had why an order should not be entered finding the Defendant in Contempt of Court for failing to comply with the terms of the Order of this Court dated February 5, 2007, and why the relief requested in the said Motion should not be granted.


_____
Judge, U.S. District Court for the
District of Columbia