UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.G.I.A., INC., <br>         **Plaintiff,** <br> v. <br> MEDEX ASSISTANCE CORPORATION, <br>         **Defendant.** | ) <br> ) <br> ) <br> ) Civil Action No. 07-CV-105-RCL <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM SHOWING CAUSE WHY AN ORDE
SHOULD NOT BE ENTERED FINDING DEFENDANT IN CONTEMPT**

In a striking example of overreaching, plaintiff AGIA, Inc. ("AGIA"), knowing full well that defendant MEDEX Assistance Corporation ("MEDEX") has complied fully with AGIA's stated objective in bringing this preliminary injunction motion – preservation of the status quo pending arbitration – and that MEDEX timely filed a well-founded motion for partial reconsideration and stay of the Court's February 5, 2007, Order, now seeks to impose a punitive remedy on MEDEX. It would be bad enough if AGIA merely brought its motion to hold MEDEX in contempt (after first ignoring MEDEX's counsel's good faith efforts to resolve matters). AGIA, however, seeks to take advantage of Judge Lamberth's absence to raise old canards that were firmly disposed of at the February 5 hearing and to represent as "fact" unsupported assertions and scurrilous allegations. The facts, however, establish that there is no basis to find MEDEX in contempt. Accordingly, the motion should be denied.

**FACTUAL BACKGROUND**

AGIA is an insurance broker that markets insurance products to affinity groups, such as the National Rifle Association. MEDEX provides worldwide travel insurance and travel assistance. In January, 2002, AGIA and MEDEX entered into a Service Agreement, under

which MEDEX agreed to provide defined indemnity and assistance benefits to individual members of various affinity groups with which AGIA had contractual relationship. In November, 2006, AGIA delivered notice that it was terminating the Service Agreement effective December 31, 2006, and that it had entered into a new contract with On Call International, LLC ("On Call") to provide travel assistance services.

To assist in AGIA's transition to On Call, MEDEX agreed to inform members of AGIA's client affinity groups who called MEDEX's telephone numbers after December 31, 2006, that On Call was their new service provider and to inform the callers of On Call's telephone numbers. MEDEX has complied in all respects with those obligations.

In conjunction with its termination of the Service Agreement, AGIA demanded, among other things, that MEDEX transfer to AGIA ownership of MEDEX-owned toll free and collect telephone numbers that had been used to serve members of AGIA's affinity group clients. AGIA offered only a nominal sum for the numbers, and refused to negotiate. When MEDEX declined AGIA's demand to transfer the telephone numbers on the lowball payment terms AGIA offered, AGIA brought this lawsuit.

The gravamen of the lawsuit is that MEDEX might, in the future, use the names and addresses provided by AGIA pursuant to the Service Agreement – an agreement that did not, by the way, preclude MEDEX from using the names and numbers in any manner relevant to this dispute – to solicit customers. Nothing in the Complaint or preliminary injunction motion asserted a cause of action that would entitle AGIA to the telephone lines owned by MEDEX.

It is undisputed that MEDEX has paid for and owns the rights to use the four telephone lines at issue.[1]  It is equally undisputed that the Service Agreement does not in any respect provide for ownership of the telephone lines by AGIA or for transfer of the telephone lines to AGIA.  It is further undisputed that AGIA has failed to identify any contractual or legal right to the telephone lines. (Indeed, in its briefing in support of its motion for a TRO and preliminary injunction, AGIA did not even suggest that it had any legal right or entitlement to the telephone lines; rather, it merely sought to bolster the "public interest" element of the preliminary injunction test by raising the specter that an Eligible Member of a AGIA Participating Group calling from a remote corner of the world would have difficulty placing a second call to On Call, the provider AGIA selected to replace MEDEX.  As MEDEX established at the hearing, this specter is a canard:  the undisputed facts establish that none of the telephone numbers at issue is used for calls outside the United States.  Nor has AGIA alleged, or submitted any evidence to prove, that anyone's access to emergency help had actually been delayed or interrupted since MEDEX's responsibility for serving members of AGIA's clients ended on January 1, 2007.)

Because the telephone numbers are valuable assets (as evidenced by this litigation) that MEDEX could not afford to leave in a non-productive state forever, MEDEX, well before AGIA filed its Complaint in this matter, redeployed one of the telephone numbers to a large health services client of MEDEX based in the United Kingdom. ("Redeployment" means that the

---

[1] AGIA, in a belated attempt to supplement the record, asserts by way of a Declaration of Michael Guglielmo filed on February 15, 2007, that one of the four telephone numbers subject to the Court's February 5 Order was originally owned by Affinity Group, Inc. ("AGI"), an entity not related to AGIA.  As a broker, AGIA apparently was involved in the transaction whereby AGI transferred the telephone number to MEDEX.  Nothing in the Declaration, however, suggests that AGIA ever owned or had any claim to (877) 565-2542, or challenges the fact that MEDEX has paid for, maintained, and owned the telephone line since at least April, 2001.  It is also telling that the Declaration does not address the other three telephone numbers at issue, which unquestionably are owned, maintained and paid for by MEDEX.

number was assigned to the UK client so that arrangements could be made by MEDEX and by the client to print customer cards and make other arrangements to go "live" with the line a few months in the future.) That client had already begun printing cards with the toll-free number for use by its members at the time AGIA filed its Complaint. MEDEX, with considerable damage to its reputation and customer relationship, has put this redeployment on hold pending resolution of the ownership issue.

When AGIA terminated the Service Agreement, MEDEX voluntarily agreed not to use any of the supposedly "confidential" customer information – and has not used the "confidential" customer information. It has been in full compliance with the Court's February 5 Order regarding the use of such "confidential" customer information.

The Court's February 5 Order, for reasons that are unclear, not only prohibits MEDEX from using the supposedly "confidential" customer information, but also orders MEDEX to convey its property right in four telephone lines to AGIA, even though the telephone lines had nothing to do with the claimed cause of action (threat of misappropriation of confidential information) and even though AGIA was unable to point to any contractual or other entitlement to the lines.

On February 8, 2007, MEDEX timely moved for reconsideration of that part of the February 5, Order concerning the transfer of the telephone lines. At the same time, MEDEX timely moved for a stay of that part of the order concerning the transfer of the telephone lines until the Court could rule on the motion for reconsideration. MEDEX was not aware, at the time of filing, that Judge Lamberth was in Southeast Asia.

Creighton Magid, counsel for MEDEX, also proposed to Ian Guthrie, counsel for AGIA, that MEDEX execute a Transfer of Service Agreement (which would have the effect of signing

4

over the rights to the telephone lines from MEDEX to AGIA), but having the Transfer of Service Agreement held in escrow or by the Court to preserve the legal rights of both parties. *See* Exhibit F to AGIA's Contempt Motion. Mr. Guthrie has refused to respond.[2] Mr. Magid also committed, in writing, to Mr. Gurthrie that MEDEX would continue to answer the four telephone lines for AGIA's affinity group customers and direct them to On Call at least until the ownership of the telephone lines can be resolved. *Id.*[3]

### ARGUMENT

There is no basis for finding MEDEX in contempt.

First, the record establishes that the status quo has been preserved. None of the supposedly "confidential" customer information has been used, and the four telephone lines at issue have continued to be used (at MEDEX's expense) in the same manner that they were used prior to the filing of the Complaint or the issuance of the Order: to direct AGIA's clients' members to On Call, AGIA's new service provider.

Second, MEDEX acted responsibly in immediately moving for reconsideration and for a stay pending resolution of the motion for reconsideration.[4] MEDEX did not know that Judge Lamberth was out of the country when it filed its motion.

---

[2] AGIA's claim, on page 7 of its Memorandum, that it has attempted to "confer in a good faith effort to resolve the issues that are raised by this motion" is belied by Mr. Guthrie's refusal to engage in a substantive conversation with Mr. Magid on the telephone or to respond to Mr. Magid's invitation for a discussion set forth in Exhibit F to AGIA's Memorandum.

[3] Although AGIA asserts, on page 3 of its Memorandum, that "many" members of its affinity group clients "will continue to call the old dedicated toll free numbers for some time to come," AGIA fails to offer any support for this assertion.

[4] AGIA's argument that MEDEX failed to move for expedited briefing is disingenuous. AGIA could, of course, have filed its opposition memorandum on an expedited basis, but has not done so.

Third, the motion for reconsideration is well founded. As set forth in greater detail in MEDEX's Memorandum in Support of its Motion for Reconsideration, the order to transfer telephone lines impermissibly alters the status quo pending arbitration. Because the telephone lines – which MEDEX has paid for, has long operated, and has no contractual obligation to provide to AGIA – have nothing to do with AGIA's claims (which involved the alleged misuse or threatened misuse of trade secrets), the Order also goes beyond the scope of the issues before the Court. The Court's ruling also unnecessarily prejudges issues to be arbitrated and grants AGIA substantive relief that it was unable to obtain through arms-length negotiation. Finally, the Court-ordered transfer of MEDEX's property in the absence of any legal claim entitling AGIA to the telephone lines violates MEDEX's constitutional rights.

Fourth, MEDEX offered to comply with the Order by executing a Transfer of Service Agreement and placing the Transfer of Service Agreement with the Court or an escrow agent until the rights of the parties could be determined. During that period, any calls received from members of AGIA's customers would be handled exactly as they have been since before the filing of the Complaint: with an immediate referral to On Call. AGIA cannot frustrate this attempt to comply with the Court's order while preserving both parties legal rights (by refusing to discuss it with MEDEX's counsel) and at the same time urge the Court to find MEDEX in contempt (and to impose thousands of dollars in punitive fines).

## CONCLUSION

MEDEX has properly maintained the status quo, as AGIA had sought. Because that portion of the Court's February 5 Order concerning telephone lines is clearly erroneous, MEDEX also promptly and appropriately sought reconsideration and a stay – motions that apparently have not been acted upon because of Judge Lamberth's absence from the country. Moreover, MEDEX has offered to execute a Transfer of Service Agreement transferring ownership of the

lines to AGIA, but has been stymied by AGIA's unwillingness to discuss the appropriate arrangements.

There has been no prejudice to AGIA – the status quo has been preserved – and no advantage to MEDEX. MEDEX has sought to comply with the Order while preserving its legal rights, and has at all times acted responsibly and appropriately. AGIA's vindictive effort to have MEDEX held in contempt and to urge the Court to impose sanctions is not warranted, and should be denied.

Dated: February 16, 2007                /S/ CREIGHTON R. MAGID_____
                                        Creighton R. Magid (D.C. Bar # 476961)
                                        Dorsey & Whitney LLP
                                        Washington Square
                                        1050 Connecticut Avenue, N.W., Suite 1250
                                        Washington, D.C. 20036
                                        magid.chip@dorsey.com
                                        (202) 442-3000 (telephone)
                                        (202) 442-3199 (facsimile)

                                        Counsel for Defendant
                                        **MEDEX ASSISTANCE CORPORATION**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 16th day of February, 2007, a copy of the foregoing

MEMORANDUM SHOWING CAUSE WHY AN ORDE SHOULD NOT BE ENTERED

FINDING DEFENDANT IN CONTEMPT was sent by first-class mail, postage prepaid to:

Stephen M. Pavsner, Esquire (spavsner@jgllaw.com)   **AND ALSO ELECTRONICALLY**
Lawrence R. Holzman, Esquire (lholzman@jgllaw.com)
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland  20770

Ian M. Guthrie, Esquire
SCHLEY LOOK & GUTHRIE LLP
311 E Carrillo Street, Suite D
Santa Barbara, CA 93101

/S/ CREIGHTON R. MAGID
_____
Creighton R. Magid